STATE v. HUNTER

No. 2604

February 5, 1925.                    232 Pac. 778.

1. CRIMINAL LAW—APPELLATE COURT WITHOUT POWER TO AMEND RECORD OF LOWER COURT.
    Motion to amend record of trial court in appellate court will be denied, in view of court rules 7 and 8, authorizing court in amendment of records only to make such orders as may be necessary to make transcript of record conform to record made in lower court and not to change such record.

2. HOMICIDE — DECLARATIONS OF DECEDENT HELD ADMISSIBLE AS DYING DECLARATIONS.
    In murder prosecutions court did not err in admitting in evidence declarations of decedent as dying declarations, where evidence showed that he believed himself to be in extremis, and no objection to declarations was interposed on that ground.

3. CRIMINAL LAW—OBJECTION TO DECLARATIONS AS DYING DECLARATIONS BECAUSE DECEDENT DID NOT BELIEVE HIMSELF TO BE IN EXTREMIS NOT AVAILABLE ON APPEAL, WHERE NOT URGED IN TRIAL COURT.
    In murder prosecution, where no objection was interposed to admissibility of declarations of decedent as dying declarations on ground that they were not made in extremis, such objection could not be urged on appeal.

4. HOMICIDE—DYING DECLARATIONS NOT HEARSAY WHEN MADE IN EXTREMIS.
    Dying declarations are taken out of hearsay class when one makes a statement while in extremis, believing himself so to be.

5. CRIMINAL LAW—JUDGMENT NOT REVERSED TO ADMIT TESTIMONY TO IMPEACH WITNESS, WHERE NOT APPEARING THAT TRIAL COURT ABUSED ITS DISCRETION.
    Before appellate court would be justified in reversing a judgment to admit testimony to impeach a state's witness, it

would be necessary to show that trial court abused its discretion in refusing to admit such testimony.

6. CRIMINAL LAW—MOTION FOR NEW TRIAL FOR NEWLY DISCOVERED EVIDENCE TO IMPEACH STATE'S WITNESS HELD PROPERLY DENIED.

Court did not err in murder prosecution in denying motion for new trial for newly discovered evidence to impeach state's witness as a seller of drugs, where all that both witnesses swore to might have been true except as to state's witness selling drugs, which was a collateral matter which would throw no light on issue before court and could not be tried in the case.

7. CRIMINAL LAW — APPLICATIONS FOR NEW TRIAL SOLELY TO IMPEACH AN ADVERSE WITNESS ARE NOT LOOKED ON WITH FAVOR.

Applications for a new trial, when sole purpose of the newly discovered evidence relied on is to impeach an adverse witness, are not looked on with favor.

8. CRIMINAL LAW—COURT HELD NOT TO HAVE VIOLATED STATUTE AS TO DEFINING REASONABLE DOUBT BY DEFINING ABIDING CONVICTION.

In murder prosecution court did not violate Rev. Laws, sec. 7165, providing that no other definition of reasonable doubt shall be given than that provided in section 7164, which court originally gave by defining term "abiding conviction" on request of jury, where all court did was to make clear statutory definition, and defendant suggested that instruction be given from some dictionary or authority.

9. CRIMINAL LAW—ERROR HELD NOT PREDICABLE ON REMARKS MADE BY SPECIAL COUNSEL FOR STATE IN ARGUMENT BECAUSE OF FAILURE TO PROPERLY PRESENT OBJECTIONS BELOW.

Error could not be predicated on remarks alleged to have been made by special counsel for state in his argument, where objections thereto were made after conclusion of argument, and court was not requested to rule thereon or to admonish counsel and instruct jury, and alleged remarks were not in record. ·

10. CRIMINAL LAW—OBJECTIONS TO IMPROPER REMARKS MUST BE MADE WHEN UTTERED.

Generally, to entitle a defendant to have improper remarks of adverse counsel considered on appeal, objections must be made to them at the time, and court must be required to rule on objection, to admonish counsel, and instruct jury.

11. CRIMINAL LAW—VERDICT NOT REVERSED, WHERE SUBSTANTIAL EVIDENCE TO SUPPORT.

Appellate court will not reverse a verdict and judgment, where there is substantial evidence to support it.

See (1, 3, 5, 6, 7, 8, 9, 10, 11) 16 C. J. sec. 2404, p. 994, n. 35; sec. 2729, p. 1202, n. 70, p. 1204, n. 71; 17 C. J. sec. 3332, p. 62, n. 94; sec. 3336, p. 71, n. 57; sec. 3450, p. 165, n. 23; sec. 3462, p. 170, n. 12; sec. 3582, p. 243, n. 55; sec. 3592, p. 255, n. 55; (4) 30 C. J. sec. 493, p. 252, n. 98; sec. 504, p. 263, n. 36; sec. 690, p. 437, n. 36.

APPEAL from Fourth Judicial District Court, Elko County; *J. M. McNamara,* Judge.

Harry H. Hunter was convicted of murder in the second degree, and he appeals. **Affirmed. Rehearing denied.** (SANDERS, J., dissenting.)

*M. B. Moore, Milton B. Badt,* and *James Dysart,* for Appellant:

Before dying declaration can be admitted it must be shown that it was made in extremis. State v. Roberts, 28 Nev. 270; People v. Hodgdon, 55 Cal. 72. Declarant must be without hope of recovery and in articulo mortis. Bilton v. Territory, 99 Pac. 163. Declarations must relate to facts and not matters of opinion. People v. Taylor, 59 Cal. 640. "I think that this man (the defendant) shot me" is inadmissible. People v. Wasson, 4 Pac. 555.

Rev. Laws, 7165, provides that none but statutory definition of reasonable doubt shall be given. Court in defining "abiding conviction" varied statutory definition. In State v. Potts, 20 Nev. 389, this court said: "It would be difficult to select words that would define their meaning better than is set forth in the statute and we would recommend to the judges that they follow the exact language of the statute and not attempt any further explanation." Cited in State v. Vaughn, 22 Nev. 285.

Statement of special prosecutor that "you can see by the expression on the faces of every decent woman in the audience that they are against these people" was prejudicial to defendant as attempt to bring outside influence upon jury to lead them to believe public sentiment demanded conviction. Withdrawal of improper testimony or argument should be so emphatic as to be unequivocal repudiation of it by court. State v. Rader, 124 Pac. 195. Public sentiment should not be expressed in presence of jury. People v. Fleming, 136 Pac. 291. Only safe rule in case of such misconduct is to grant new trial, unless it is clear verdict was not affected thereby. People v. Ah Len, 28 Pac. 286. In People v.

Hail, 143 Pac. 803, court reversed conviction for improper remarks of district attorney. Where prosecuting attorney is guilty of conduct calculated to arouse prejudice or passion, conviction should be set aside. Hager v. State, 133 Pac. 263; People v. Fielding, 46 L. R. A. 641; State v. Rodriguez, 31 Nev. 342.

*M. A. Diskin*, Attorney-General; *Thos. E. Powell*, Deputy Attorney-General; *W. T. Mathews*, District Attorney, for the State:

Affidavit on motion for new trial for newly discovered evidence must show due diligence prior to or during trial; must show what was done to make discovery and not state conclusion that evidence could not be discovered. Robinson M. Co. v. Riepe, 37 Nev. 27; 20 R. C. L. 397. Affidavit must show facts would be material. Newly discovered evidence merely tending to discredit witness is not sufficient. 20 R. C. L. 294; Whise v. Whise, 36 Nev. 16; Robinson v. Riepe, supra.

Dying man may seek relief from agony if only for short while. Sending for doctor does not indicate hope of recovery. Milton v. State, 32 So. 653; State v. Kuhn, 90 N. W. 733. If court is satisfied of state of mind of deceased at time of making declaration, it is enough. State v. Roberts, 28 Nev. 350. Nature of wound and state of wounded person may be considered in passing on question. Underhill Crim. Ev. (3d ed.), sec. 173; Territory v. Eagle, 30 L. R. A. (N. S.) 391. Objection to dying declaration as being hearsay is not well taken. All evidence of dying declarations is hearsay. State v. Murphy, 9 Nev. 394. General objection to dying declaration should be overruled if any part is admissible. Lipscomb v. State, 23 So. 210; State v. Williams (Nev.), 220 Pac. 555.

Counsel for defendant made no objection at the time to court's giving definition of "abiding conviction." Defendant was not prejudiced thereby. Statutory definition of reasonable doubt was not changed. Two words only were explained to enable jury better to understand language used.

Limits to which counsel may go in discussing evidence must be left to discretion of court. It is only where remarks are clearly prejudicial that instruction to disregard will not cure. Court, at time remark was made, instructed jury not to consider it. Prosecutor apologized to jury for any improper statements. Unwarranted statements are not sufficient to justify new trial where they are withdrawn or ordered stricken out. State v. Petty, 32 Nev. 284; 46 L. R. A. 641.

## OPINION

By the Court, COLEMAN, C. J.:

The defendant was convicted of murder in the second degree. He has appealed from the judgment and from the order denying his motion for a new trial.

1. A preliminary question is presented for determination in the form of a motion to amend the record. In support of the motion affidavits are produced, and our attention is directed to the rules of this court. Rules 7 and 8 are the only ones which contemplate any action by this court pertaining to amendments to records. They go no further than to authorize the court to make such orders as may be necessary to make the transcript of the record conform to the record made in the lower court, and not to change the record of the lower court. This court has no power to alter or amend the record of the lower court. The motion is denied.

The appellant has assigned five errors as grounds for a reversal of the judgment.

Prior to the giving of the testimony in the presence of the jury the court heard the evidence to determine its qualification to show a dying declaration. For this purpose the testimony of six witnesses was taken and no objection was made to it upon either of the grounds now urged. The court was of the opinion that the testimony was sufficient to go to the jury, and so ruled. The first witness to testify before the jury was Chin Gim, who, having testified as to certain preliminaries, gave evidence to the effect that Charley Yee Hee, after

responding to a call of the bell in the booth, came back into the room in which was the lunch counter, shouting: "Help! Help! Save my life! I have been shot; shot right through; I am about to die." He kept on saying: "Save me; get me help. I am about to die. I am shot through." This witness called for W. H. Robertson, proprietor of the hotel. Neither of them was then able to learn who did the shooting. The witness testified that the deceased "was suffering, so I helped him into the bedroom." This witness testified that while he, Mr. Robertson, and the son of the deceased were in the bedroom Mr. Robertson asked the deceased who shot him, whereupon the following objection was made by counsel for the defendant:

"We object, if the court please, on the ground the proper foundation has not been laid for any statement on the part of Charley Yee Hee. Whatever statement or declaration he may have made is hearsay; also it was not made in the presence of the defendant, or it has not been shown it was made in the presence of the defendant; also it has not been shown yet what question was asked him."

The objection having been overruled, the witness testified that the deceased stated that Harry Hunter shot him. He then gave the following evidence:

"Q. Was that all that was said?

Thereupon counsel interposed: "We understand that our objection goes to all this line of questions."

"The Court: It may be so understood, and the same ruling and exception.

"Q. What did he reply? A. Carpenter; Margie's man.

"Q. Were these words said by Charley Yee Hee? A. Yes.

"Q. Were they said in the Chinese language? A. That was in English."

2, 3. From a reading of the above objection, which is the one relied upon during the trial as going to all of the same line of evidence, it seems that no objection was interposed upon the ground that the deceased did not

believe himself to be in extremis; hence this objection cannot be urged now. However, we think the evidence shows that the deceased believed himself to be in extremis.

4. Just what is meant by the objection that the testimony is hearsay we are somewhat at a loss to understand. Dying declarations are taken out of the hearsay class when one makes a statement while in extremis, believing himself so to be. The trial court was in a better position than are we to determine as to the condition of the deceased and whether he believed himself in extremis, but from a reading of the entire testimony it seems that there can be no doubt upon that point. He was suffering greatly, manifested great alarm, and was told he was going to die and did die within about a half hour. We do not think the court erred in admitting the evidence. We may say that counsel in their brief call our attention to some cases which hold that certain evidence is incompetent, but they go to a situation not presented by the objection made and ruled upon in the trial court, and hence will not be considered here.

It is also contended that the court erred in denying a motion for a new trial based upon the ground of newly discovered evidence. In support of the motion defendant relies upon an affidavit of John Kocas, who swore that on the morning of the shooting, and shortly prior thereto, he went into the Overland Hotel building, passed the lunch counter, into the kitchen, and out into the yard, and then to the window opening out into the back yard from the room which was then occupied by George Wah, one of the witnesses for the state; that on that morning a portion of a pane of glass was broken out of said window, and that he saw Wah lying in his bed in the room, and spoke to him, and passed to him $8 in exchange for some drugs which Wah passed out to him, and that this was one of the numerous occasions on which the same character of transaction had been conducted between them; that he then went back to his work at the depot and learned about an hour or an hour and a half later of the shooting of the deceased.

He also swore that he had often seen in the possession of George Wah a large Colt revolver which he took for a .38 caliber on a large frame, and that he had seen such a revolver in his possession two or three weeks prior to the killing.

5-7. We cannot say that the court erred in denying the motion. The purpose of the testimony was to impeach George Wah, and, before we would be justified in reversing the judgment for this reason, it must appear that the trial court abused its discretion. We think there is no showing whatever leading to such a conclusion. The fact is, all that both swore to might have been true, except as to Wah's selling drugs. As pointed out in State v. Willberg, 45 Nev. 183, 200 P. 475, applications for a new trial, when the sole purpose of the newly discovered evidence relied upon is to impeach an adverse witness, are not looked upon with favor. Furthermore, Wah's selling of drugs is a collateral matter which could throw no light upon the issue before the court and could not be tried in this case, and it had no place in it. The court did not err in its ruling.

8. It is next contended that the court erred in giving an instruction which changed the one wherein the statutory definition of reasonable doubt was originally given. After the jury had retired to consider the case, it returned into the courtroom and requested the court to define the meaning of the term "abiding conviction" contained in the statutory instruction originally given by the court, whereupon the court gave the following:

"The words 'abiding conviction,' as used in instruction No. 4 heretofore given you, mean such a settled and fixed opinion in your minds with reference to the truth of the charge that it will not admit of any other reasonable conclusion."

In this connection our attention is directed to section 7165, Revised Laws, which provides that no other definition of reasonable doubt shall be given by the court in its instruction than that provided for in section 7164, which was the one originally given. It is contended that the court, in defining "abiding conviction," violated

section 7165. No contention is made that the words were erroneously defined. The contention is, to say the least, hypertechnical. One to the effect that an "i" is not dotted or a "t" is not crossed would not be more so. But can it be said that the court violated section 7165? We think not. It is not contended that the court gave any other definition of reasonable doubt than that given by the statute. All that the court did was to make clear the statutory definition. This is not in violation of the statute. No error was committed nor was any prejudice suffered by the defendant. The contention is utterly devoid of merit. Furthermore, it appears from the record that counsel for the defendant suggested the instruction be "given from some dictionary or some authority." It is not contended that the court did not comply with counsel's suggestion.

9, 10. It is also contended that prejudicial error was committed by special counsel for the state by certain remarks alleged to have been made in his argument. What was said does not appear from the bill of exceptions. They were not taken down and incorporated in the record. We find the following note in parenthesis:

"Objection made by counsel for defense to attention being called to the outside evidence and assigned as error."

After this note we find the following:

"Court: The expression of spectators' faces should not be considered as evidence in this case."

We then find the following statement by counsel for defendant:

"Without the evidence in the case it cannot be shown.

"Court: The objection is overruled. You may swear the officers to take charge of the jury."

From the appearance of the record the objections made by counsel were after the conclusion of the argument by special counsel, and not at the time the alleged objectionable matter was stated. If the remarks of counsel were based upon any evidence in the case, it is clear that they would have been proper, but, since the alleged remarks are not in the record, we cannot tell if the evidence justified such remarks. State v. McMahon,

17 Nev. 365, 30 P. 1000. Furthermore, as a general rule, to entitle a defendant to have improper remarks of counsel considered on appeal, objections must be made to them at the time, and the court must be required to rule upon the objection, to admonish counsel, and instruct the jury. This was not done, so far as the record shows.

11. The remaining assigned error is that the verdict is contrary to the evidence. This court has repeatedly held that it will not reverse a verdict and judgment where there is substantial evidence to support it. State v. Buralli, 27 Nev. 41, 71 P. 532. The killing is admitted, and there is ample evidence to sustain the verdict.

Judgment affirmed.

DUCKER, J.: I concur.

SANDERS, J., dissenting:

The record discloses that three Chinamen, known as George Wah, N. Wing, and Charles Yee Hee, conducted a restaurant in the Overland Hotel at Carlin, Elko County, Nevada, and had in their employ one Chin Gim as night waiter. On the night of January 5, 1924, Charles Yee Hee was on duty in the restaurant as cook and Chin Gim as waiter. About the hour of 5: 45 a. m. of January 6, 1924, Charles Yee Hee and Chin Gim were conversing at the lunch counter in the restaurant when Charles Yee Hee answered a call bell from one of the boxes or booths therein and was shot in the left breast by some person unknown. The wound was unquestionably mortal. The danger of such a wound as that inflicted, together with the physical condition of Charles Yee Hee, aside from any exclamations made by him immediately after he was shot, was probably sufficient under the circumstances to admit his declarations in evidence under the rule of dying declarations.

The principal controversy in the case was as to who committed the crime. The homicide occurred on the inside of the booth situate at a door leading out into the rear of the premises. The deceased made no declarations as to the circumstances attending the shooting, and when the night waiter, Chin Gim, asked the

deceased who shot him he made no reply, and continued to exclaim that he had been shot, calling for help, and ejaculating in a loud voice in the Chinese language that he was going to die. The night waiter was the first to give the alarm of the shooting. The first person to appear on the scene after the alarm was given was one W. H. Robertson, proprietor of the .hotel, whose testimony was, in substance, that when he came into the restaurant Charles Yee Hee was standing behind the lunch counter, leaning over, and he said to the witness that he had been shot. The witness asked, "Who shot you?" and he replied that he did not know. The witness then armed himself and made a search of the premises, and on his return to the restaurant again asked Charles Yee Hee who shot him, and he said that it was a tall man with a mackinaw on. The witness told Yee Hee that he was dying, and suggested to Chin Gim that he be taken to a bed. He was led to the booth where he was shot, and the night waiter went to the room of George Wah and informed him of the shooting. He also went to the room of Yee Hee's son, known as Yee Get, and told him of the shooting. The son, after conversing with the night waiter in Chinese, went to the booth, and, while alone with his father, asked who shot him and he replied that Harry Hunter shot him. Subsequently George Wah went to the bedside of Yee Hee and conversed with him alone and asked who shot him, and he replied that Harry Hunter shot him, the carpenter or builder. Subsequently the witness W. H. Robertson came into the booth, and in the presence of Chin Gim and Yee Get again asked Yee Hee, "Who Shot You?" and he said, "I think Harry" or "Hallie," trying to say "Harry." This was the last expression—in fact, the last words uttered by Yee Hee.

The record discloses that the only tangible evidence of the guilt of the defendant was the so-called dying declarations of Yee Hee, and the question is whether these declarations, standing together, sufficiently identify the accused, as a matter of law, to be the person who committed the crime.

What constitutes a dying declaration per se is a question of law for the court to decide; likewise the judge must determine whether the declaration itself is one of fact, and therefore admissible, or whether it is one of mental impression, opinion, or conclusion, and therefore inadmissible. The judge has to deal with the matter as a preliminary question of fact. 1 Wharton's Criminal Ev. (10th ed.), sec. 296b.

While the deceased made no declaration as to the conditions or circumstances surrounding the shooting, there is evidence in the record tending to show that it was physically impossible for the deceased to have known who shot him. The booth in which he was shot had an electric light in it, but there is no testimony to show that the light was turned on, and even if it had been the room would have been dimly lighted. The evidence further tends to show that the person who fired the shot was concealed behind curtains suspended about the entrance to the booth.

Conceding that responses made to direct questions put to the deceased as to who shot him are admissible as dying declarations in the absence of a statute, the proof shows that the Chinese witnesses who asked the deceased who shot him were suspicious that Harry Hunter was the guilty party, because of threats he had made to kill Charlie Yee Hee about ten days before the homicide, and, further, one expression repeatedly used by the deceased in the presence of Chin Gim immediately after he was shot, "I knew this was going to come," seems to have created the impression that this expression of the deceased was inspired by the suspicion that Harry Hunter was the person who shot him.

I concede that the weight to be attached to dying declarations as evidence is for the jury to determine, and, if there is a conflict in the declarations, the question is one of fact for the jury to determine. In this instance the deceased stated to his son and to his partner in business as a fact that it was Harry Hunter who shot him. These persons were naturally eager to know who committed the crime, and entertained a suspicion that

Hunter was the guilty party. The deceased's declaration that he thought it was Harry Hunter who shot him, made to a disinterested witness, and it being practically his dying words, I am of opinion that the last dying statement of the deceased that he thought it was Harry Hunter who shot him was the expression of his opinion or belief not based on any facts. It is indispensable that the dying declarations to be admissible should consist solely of facts, and not of conclusions, mental expressions, or opinions. Underhill, Criminal Ev. (2d ed.), sec. 108.

The atmospheric conditions surrounding the declarations and the last statement of the deceased in life that he thought it was Harry Hunter who shot him are sufficient to warrant the reversal of the judgment and to entitle the defendant to a new trial. I therefore dissent from the opinion of the majority in the affirmance of the judgment.

### ON PETITION FOR REHEARING

May 1, 1925.                                    235 Pac. 645.

1. CRIMINAL LAW—OBJECTIONS TO REMARKS OF SPECIAL PROSECUTOR MADE AT CONCLUSION OF ARGUMENT TOO LATE FOR REVIEW.

Objections to remarks of special prosecutor which were not made until close of argument *held* too late for review.

2. CRIMINAL LAW—OBJECTION TO ADMISSION OF DYING DECLARATION NOT PRESENTED AT TRIAL NOT BASIS FOR ASSIGNMENT OF ERROR.

In murder prosecution, objection to admissibility of dying declaration, in that it only went to extent of declaring that deceased thought accused shot him, could not be basis for error or justify reversal, where it was not made at trial.

3. CRIMINAL LAW—APPEAL IN CRIMINAL CASES CAN BE TAKEN ON QUESTION OF LAW ONLY.

Under Const. art. 6, sec. 4, and Rev. Laws, sec. 7287, appeals in criminal cases can be taken on questions of law only.

See 17 C. J. sec. 3331, p. 59, n. 35; sec. 3332, p. 62, n. 94; sec. 3542, p. 202, n. 76.

**Rehearing denied.** (SANDERS, J., dissenting.)

## OPINION

By the Court, COLEMAN, C. J.:

A petition for rehearing has been filed, wherein it is

insisted that the court erred in certain of its rulings. In the opinion we quoted the objection to the testimony which was made by counsel during the trial, and based our ruling upon the objection as made. In that opinion we said that, in view of the fact "that no objection was interposed upon the ground that the decedent did not believe himself to be in extremis," that point could not be urged in this court. We went a step further, however, and said that we thought it was satisfactorily shown that the trial court was justified in its conclusion. We are satisfied with both of the views expressed, but the first is conclusive, and as to that no point is made in the petition for a rehearing.

1. The next contention is that we overlooked that portion of the bill of exceptions containing the language used by the special prosecutor which, it is urged, constituted reversible error. It is true that we did not see this statement, and for very good reasons. In the first place, it is where no one would ever look for such a statement and, secondly, we were referred, on page 4, line 24, of the opening brief filed in behalf of appellant, to page 690 of the transcript of the testimony as the place where we would find the matter complained of, and where we did find what was quoted in our opinion and nothing more. On page 3 of the petition for a rehearing we are directed to page 2 of defendant's proposed bill of exceptions. The transcript of the testimony in this case consists of two volumes of nearly 700 pages of typewriting, to which is prefixed other matter, such as the information, instructions, etc., at the very end of which we find, on what is designated as page 90, the matter now complained of.

While we find in the record a statement of the language used by the special prosecutor, no objection or action appears to have been taken, save what was quoted in our former opinion and, as there shown, what was said and done was at the conclusion of counsel's argument rather that at the time the statement was made. It appears that the authorities are uniform in holding that this is too late. 16 C. J. 914, sec. 2267. But counsel says that, in view of the statement found on page 90, to

the effect that the alleged error "was duly and regularly
objected to and assigned as error by defendant's
counsel," overcomes the record as quoted in our opinion.
Counsel failed to quote the entire record, for it continues
to read, "as appears on page 690 of the original tran-
script herein." This latter quotation qualifies the por-
tion of the quotation relied upon, and brings it squarely
within the ruling made in our opinion and restated
above.

Counsel urge that we reconsider the evidence and
particularly that discussed in the dissenting opinion
herein, which was given by W. H. Robertson, wherein
he stated that the deceased said he "thought it was
'Hallie' " who shot him.

2, 3. We do not think there is any real occasion for
further consideration of the matter. In our original
opinion we disposed of every objection made during the
trial and urged in this court and, we think, correctly.
The point made in the dissenting opinion to the effect
that what one thinks cannot be the basis of a dying dec-
laration is hornbook law, but no objection was made
in the trial court on that ground, and hence cannot be
the basis of an assignment of error here, or justify this
court in reversing a verdict of twelve men and over-
riding the ruling of the judge. Furthermore, that state-
ment is just one small scrap of the testimony. This
court was created to consider and pass upon errors of
the trial court, and it can hardly be said that an error
was committed in the reception of evidence, unless a
timely objection is made to it. Furthermore, that evi-
dence purports to relate what was said immediately
after the shooting and before the deceased was taken to
his room, at which time it clearly appears that the
deceased was in a frenzy. Besides, we have the testi-
mony of Constable Berning and four or five other wit-
nesses relating that the deceased clearly indicated that
the defendant was the man who shot him. In the face
of the testimony of these witnesses, we are unable to
see any excuse for holding that the evidence does not
justify the verdict, or wherein we can find excuse to

override the plain provision of section 4 of article 6 of our constitution and section 7287, Rev. Laws, which provide that appeals in criminal cases can be taken on questions of law only.

Petition is denied.

DUCKER, J.: I concur.

SANDERS, J.: I dissent.