DALE EDWARD FLANAGAN, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 17130

May 18, 1988 754 P.2d 836

*Morgan D. Harris,* Public Defender, *Robert L. Miller,* Deputy, *Terrence M. Jackson,* Deputy, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy, *Ronald C. Bloxham,* Deputy, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

A jury convicted Dale Edward Flanagan of murdering his

grandparents and sentenced him to death. For the reasons set forth below, we affirm the conviction but set aside the death sentence and remand for a new penalty hearing.

On the afternoon of November 6, 1984, Carl and Colleen Gordon were found dead in their Las Vegas residence. Mr. Gordon, a fifty-eight year old air traffic controller, had been shot seven times in the back and chest. Mrs. Gordon, a fifty-seven year old housewife, had been shot three times in the head. The record contains overwhelming evidence that nineteen year old Flanagan and his co-defendants planned to kill the Gordons in an effort to obtain insurance proceeds and an inheritance. With the express purpose of killing the Gordons, Flanagan and the others broke into the Gordon residence and accomplished their deadly objective.

This appeal, once again, focuses our attention on the troubling and recurring issue of prosecutorial misconduct. Flanagan contends that prosecutorial misconduct at the guilt and sentencing phases of his trial denied him a fundamentally fair trial. Having carefully reviewed Flanagan's claims of misconduct at the guilt phase, we conclude that the prosecutor's actions were not so prejudicial as to mandate reversal. When a guilty verdict is free from doubt, even aggravated prosecutorial remarks will not justify reversal. Yates v. State, 103 Nev. 200, 734 P.2d 1252 (1987); Dearman v. State, 93 Nev. 364, 566 P.2d 407 (1977). Here, there was overwhelming evidence of Flanagan's involvement in the planning and execution of the murders. Given the strength of the State's case, we hold that the prosecutor's conduct did not render the determination of Flanagan's guilt fundamentally unfair.

We cannot, however, reach the same conclusion when considering the allegations of prosecutorial misconduct at the sentencing phase of Flanagan's trial. At the sentencing phase, it is most important that the jury not be influenced by passion, prejudice, or any other arbitrary factor. Hance v. Zant, 696 F.2d 940, 951 (11th Cir. 1983). "With a man's life at stake, a prosecutor should not play on the passions of the jury." Id. Even in what was apparently intended to be a review of the facts, the prosecutor could not resist the temptation to weave in an inappropriate appeal to passion when he stated:

> Well, I remember grandma. I remember my kindly Swedish grandmother. I remember the cookies and milk and I remember crawling up into her lap, a warm ample lap.
>
> But I don't ever remember crawling into that lap and wrestling her down and holding my hand over her mouth and shooting her three times in the head with a .22 pistol. I don't remember that about my grandmother. That is what [the defendant] remembers about his grandmother.

Based on our evaluation of the seventeen allegations of prosecutorial misconduct, we have identified five categories of misconduct which warrant our consideration and unequivocal condemnation.

While objections by defense counsel were hardly an exemplar of a properly made contemporaneous objection, the delay was caused by what was perceived to be the court's wish that counsel not interrupt the continuity of proceedings but rather wait until a recess. This procedure apparently was acquiesced in by the prosecution, which stated, "We have all pretty much stayed away from objecting; I will go along with that."

Moreover, the State did not argue this as an issue in its brief. Accordingly, under these circumstances, where a life is at stake, we will consider the allegations of misconduct as if there had been compliance with the contemporaneous objection rule.

### REFERENCE TO IMPROBABLE REHABILITATION AND FUTURE KILLINGS

We find particularly objectionable, the prosecutor's repeated references to Flanagan's improbable rehabilitation and future killings. In direct contravention of our ruling in Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985), in which we stated that such comments were highly inappropriate, the prosecutor in the instant case made the following egregious remarks:

> Now, there are three reasons for the death penalty. One is to keep a particular defendant from ever killing again. Now, if they are given parole, they can go out into society and kill again. If they escape, they can go into society and kill again. If they are kept in prison forever, they can kill again, prison guards, other inmates. . . .
>
> And I don't like the burglary and robbery and sexual assault inmates that I and others have sent to the Nevada State Prison, but I don't suggest they should ever have to die at the hands of a Dale Flanagan or a Randolph Moore.
>
> And I suggest to you these two, as well as anyone else who have proved their ability, their capability, their willingness to murder, is capable of doing it again. And so that is one reason that we can give to give the death penalty so that an individual will never kill again.

Moreover, we note that the prosecutor's above reference to the possibility of escape is improper. "The prospect of escape is not part of the calculus that the jury should consider in determining a defendant's sentence." *Id.* at 479.

As in *Collier,* the prosecutor also made a number of comments which we deem to be deliberate exhortations to convince the jury that the only rational solution was to execute Flanagan before he could kill again. Statements like "if I take that chance and give them life, I hope I am right because if you are wrong, there are more Carl and Colleen Gordons out there waiting to be killed" and "tell them . . . you as a jury have decided that they are never going to have the opportunity to kill again" impermissibly inflamed the jury's emotions. Such statements placed undue pressure on the jury to conclude that Flanagan would undoubtedly kill again unless he himself were put to death.

## EXPRESSION OF PERSONAL BELIEFS

This court has consistently held that it is improper for a prosecutor to inject his opinion or personal beliefs into his argument. Aesoph v. State, 102 Nev. 316, 322-23, 721 P.2d 379, 383 (1986); McGuire v. State, 100 Nev. 153, 677 P.2d 1060 (1984). In *Collier,* 101 Nev. at 480, 705 P.2d at 1130, we stated:

> Such an injection of personal beliefs into the argument detracts from the "unprejudiced, impartial, and nonpartisan" role that a prosecuting attorney assumes in the courtroom. (Citations omitted.) By stepping out of the prosecutor's role, which is to seek justice (citations omitted), and by invoking the authority of his or her own supposedly greater experience and knowledge, a prosecutor invites undue jury reliance on the conclusions personally endorsed by the prosecuting attorney.

Accordingly, we find it was impermissible for the prosecutor in the case at bar, to inform the jury that he did not take his responsibilities lightly, that he tried to discriminate between penalties, and that the death penalty was the only penalty that he would even suggest that the jury consider.

The prosecutor tendered his own credentials by telling the jury that he had been "doing these kinds of cases" for fifteen years. In urging the death penalty, he said the defendants "may con this jury but [they] haven't conned this prosecutor." He further suggested that a death penalty in this case would avoid the error committed when a jury just one month earlier gave only a life sentence to Scotty Sloane for the "horrible crime" of killing Nancy Menke.

Remarks such as these are prime examples of a prosecutor's invoking the authority of his office. The effect of these arguments is to assure the jurors that "someone with greater experience has already made the decision that the law imposes on them." Tucker

v. Zant, 724 F.2d 882, 889 (11th Cir. 1984). Moreover, there is no question that the prosecutor stepped out of his role as a representative of the State when he informed the jury that if *he* had to make the decision, giving Flanagan the death penalty would be an easy choice. We simply will not condone such an expression of personal belief in the context of a penalty hearing.

## REFERENCES TO ANOTHER CONVICTED MURDERER

During the trial, one of Flanagan's co-defendants called sixteen year old convicted murderer Scott Sloane as a defense witness.[1] In arguing for the death penalty for Flanagan, the prosecutor first compared young Sloane to the "fuzzy-cheeked, rose complected" defendants in the case at bar and then went on to criticize the jury which had given Sloane life with the possibility of parole.[2] Next, the prosecutor informed the jury that it, like Sloane's jury, might have a "tussle with its conscience" because the defendants were so young. Later, the prosecutor referred to an alleged death threat made by Sloane and stated that the jury need only look to Sloane for the suggestion that Flanagan could kill again if he were not given the death penalty.

In *Collier,* 101 Nev. at 478, 705 P.2d at 1128, we held that a prosecutor's references to a notorious Nevada criminal were improper because they discussed matters not in evidence and because there was no factual basis to suggest a relationship between the defendant and the notorious criminal. Here, Scott Sloane had absolutely no connection with the defendants. Sloane and the defendants were similar in that they were all very young

---

[1]Sloane's conviction stemmed from the kidnap, rape, and murder of a woman in Las Vegas. Sloane received a life sentence with the possibility of parole.

The substance of Sloane's testimony was that he had been in detention with co-defendant Luckett for five months and that Luckett had discussed various details of the crime with him. Prior to this period of incarceration, Sloane had not known any of the defendants in this case.

[2]The comment in its entirety reads:

> You never saw in that trial the Scotty Sloane we saw in this stand. He even stood up here in front of the jury and he pawed at the ground and made the same kind of noises that these fellows have made. And it worked. That jury gave him life with the possibility of parole for the killing of Nancy Menke.
>
> And until today, I have not criticized that jury and it is not my habit ever to do so. And irrespective of your verdict, I would never criticize a jury.
>
> But looking at it from the other side of the coin, I think we can guess that the jury didn't have all the information before it it needed. It was wrong about Scott Sloane.

men who committed heinous crimes. These similarities, however, do not constitute an open invitation to the prosecutor to criticize the jury in Sloane's case for giving him life with the possibility of parole and then urging Flanagan's jury not to make the same mistake. A jury's decision in a totally different case has nothing whatsoever to do with whether Flanagan should be sentenced to death. Similarly, a death threat made by Sloane is totally irrelevant and no indication that Flanagan would ever kill again. Such remarks are patently prejudicial and serve to divert the focus of the juror's attention.

### REFERENCES TO FLANAGAN'S FAILURE TO TESTIFY

The established test for determining whether prosecutorial comment constitutes a prohibited direct reference to a defendant's failure to testify is whether the language used was "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to respond." Deutscher v. State, 95 Nev. 669, 682, 601 P.2d 407, 416 (1979). Here, the prosecutor first made reference to Scott Sloane's testimony under oath and then argued that "these fellows [the defendants] for the most part, by the way, didn't even do that." Our close examination of this language indicates that this remark is a direct comment on Flanagan's failure to testify. Next, the prosecutor stated that "[t]hey [the defendants] could or could not take the stand, whatever they wanted." While we note that this comment is not so direct that the jury would necessarily take it to be a comment on Flanagan's failure to respond, we find that, when taken in context, this comment as well, is an impermissible reference to Flanagan's silence. We conclude that the prosecutor's remarks were a violation of Flanagan's fifth amendment right to remain silent and constitute reversible error.

### REFERENCES REGARDING COMMUNITY STANDARDS

We finally wish to express our strong disapproval of the prosecutor's statement "If we don't punish, then society is going to laugh at us."[3] In *Collier,* 101 Nev. at 479, 705 P.2d at 1129, this

---

[3]The entire remark is as follows:

> There is a third reason. Simply to punish. . . . If we don't punish, then society is going to laugh at us. They are going to say "Well, it's just another case of --" we read all about the stuff about society complaining about the ills of the world and crimes taking over and they refuse to do anything about it. Well, as has been said before in this courtroom today, now is your chance.

court held that a prosecutor could not blatantly attempt to inflame the jurors by urging that if they wished to be deemed "moral" and "caring" then they must approach their duties in anger and give the community what it needs. We observe that the prosecutor's remark in the instant case serves no other purpose than to raise the specter of public ridicule and arouse prejudice against Flanagan.

We are compelled to conclude that the cumulative effect of the prosecutor's extensive misconduct was of such magnitude as to render Flanagan's sentencing hearing fundamentally unfair. Given the uncontroverted evidence of guilt, there is simply no justification for such outrageous behavior. *See* State v. Cyty, 50 Nev. 256, 256 P. 793 (1927). This case is remanded for a new penalty hearing.

We have examined Flanagan's other assignments of error and find them to be without merit.

YOUNG and SPRINGER, JJ., concur.

GUNDERSON, C. J., and STEFFEN, J., concurring and dissenting:

We agree that any improprieties which may have occurred during the guilt phase of the trial were not prejudicial. However, we respectfully dissent from the majority opinion insofar as it requires a new penalty hearing.

The United States Supreme Court, in United States v. Young, 470 U.S. 1 (1984), declared that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *Id.* at 11. Although prosecutorial misconduct did occur in this case, the remarks did not deprive Flanagan of a fair trial. Anything the prosecutor said about Flanagan paled in comparison to the portrait painted by Flanagan himself as he terrorized and murdered his grandparents. *See* Wainwright v. Darden, 106 S.Ct. 2464 (1986); Darden v. State, 329 So.2d 287 (Fla. 1976). We are persuaded that the prosecutor said nothing that influenced the jury to deal more harshly with Flanagan than it would have absent the prosecutor's comments.

Moreover, this court said in Moser v. State, 91 Nev. 809, 544 P.2d 424 (1975):

> In State v. Hunter, 48 Nev. 358, 367, 232 P. 778, 781 (1925), this court held that "to entitle a defendant to have

improper remarks of counsel considered on appeal, *objections must be made to them at the time, and the court must be required to rule upon the objection, to admonish counsel, and instruct the jury."* This requirement was reiterated in State v. Fitch, 65 Nev. 668, 200 P.2d 991 (1948), and more recently in Mears v. State, 83 Nev. 3, 442 P.2d 230 (1967). No such request was made in the instant case.

*Id.* at 814, 544 P.2d at 427 (emphasis added).

The rule just mentioned has since been relied upon in cases even more recent than *Moser. See, e.g.,* Kelso v. State, 95 Nev. 37, 44, 588 P.2d 1035, 1040 (1979); Mercado v. State, 100 Nev. 535, 538, 688 P.2d 305, 307 (1984). Therefore, as stated in Point v. State, 102 Nev. 143, 717 P.2d 38 (1986), we need not consider the issues of misconduct which defendant's counsel belatedly seeks to raise, "since there was no objection at trial that would have alerted the district court to the necessity of avoiding the possibility of error," 102 Nev. at 147, 717 P.2d at 42. This rule may not be nullified by any agreement, express or implied, between counsel even when promoted or endorsed by the trial judge.