RICHARD LEE HABERSTROH, APPELLANT, *v.*
THE STATE OF NEVADA, RESPONDENT.

No. 18617

November 27, 1989                                    782 P.2d 1343

*Morgan D. Harris,* Public Defender, *George E. Franzen,* Deputy Public Defender, and *Robert Miller,* Deputy Public Defender, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, and *Thomas L. Leen,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, STEFFEN, J.:

On July 21, 1986, Richard Lee Haberstroh abducted a woman from a grocery store parking lot. Haberstroh then took his victim into the desert outside Las Vegas, where he robbed her, sexually assaulted her, and, finally, strangled her. The strangulation caused irreparable brain damage, which ultimately resulted in the woman's death.

A jury found Haberstroh guilty of the murder and sentenced him to death. The jury also convicted Haberstroh of first-degree kidnapping, sexual assault, and robbery, each with the use of a deadly weapon. Haberstroh received four consecutive life sentences without possibility of parole for the kidnapping and sexual assault convictions and two consecutive fifteen-year sentences for the robbery conviction.

Haberstroh now asserts that certain of the prosecutor's arguments during the sentencing phase of his trial constituted prosecutorial misconduct and warrant a new penalty hearing. We disagree.

In his final argument to the jury, the prosecutor argued that in light of Haberstroh's past conduct in prisons, the imposition of the death penalty was the only way to be sure Haberstroh would not kill again. In support of his argument, the prosecutor relied on evidence present in the penalty hearing which indicated that Haberstroh, while serving a term in a federal prison, masterminded an escape plot that included the taking of hostages at gunpoint. The prosecutor's evidence further revealed that Haberstroh, while serving yet another prison term, had fashioned a deadly weapon out of a piece of metal and used it to threaten the life of a prison guard in another escape attempt. The prosecutor finally pointed to evidence showing that Haberstroh had acquired and concealed a piece of angle iron in the Clark County jail just two days before his penalty hearing in this case.

When there is evidence, as in this case, of a defendant's past conduct which supports a reasonable inference that even incarceration will not deter the defendant from endangering others' lives, a prosecutor is entitled to ask the jury to draw that inference. *See* State v. Green, 81 Nev. 173, 176, 400 P.2d 766, 767 (1965). The prosecutor is further entitled to ask jurors to consider that inference when deciding whether to impose the death penalty. *See* Skipper v. South Carolina, 476 U.S. 1, 5 (1986). "Consideration of a defendant's past conduct as indicative of his probable future behavior is an inevitable and not undesirable element of criminal sentencing." *Id.*

This is not a case in which the prosecutor made purely speculative predictions as to a defendant's improbable rehabilitation and future propensity to kill in an attempt to persuade the jury to impose the death penalty. *See* Flanagan v. State, 104 Nev. 105, 754 P.2d 836 (1988); Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985). Here, the evidence of the defendant's past conduct in prisons and jails justified the prosecutor's argument that unless

executed, Haberstroh may continue to pose a threat to the lives of others. The prosecutor did not, in this instance, violate the dictates of *Collier.*

Haberstroh argues that the prosecutor also committed misconduct when he referred to the jury as "the conscience of the community." To the extent the comment can be considered misconduct, the court's admonition that the jury disregard the statement cured any possible prejudice. *See* Snow v. State, 101 Nev. 439, 447, 705 P.2d 632, 638 (1985). Therefore, we conclude that Haberstroh received a fair penalty hearing.

Haberstroh also raises a number of contentions concerning the fairness of the guilt phase of his trial. We have carefully considered these contentions and conclude that each lacks merit. Accordingly, we affirm each of Haberstroh's convictions and the corresponding sentences.

YOUNG, C. J., MOWBRAY and ROSE, JJ., concur.

SPRINGER, J., concurring:

Our case law is well settled: a prosecuting attorney may not argue to a death penalty jury that a murder convict should be executed because he is a threat to kill other innocent victims in the future.[1] For example, in *Collier* we said it was improper for the attorney to argue that "there was but one 'rational' solution," namely, "to execute Collier before he could kill again." *Collier,* 101 Nev. at 478, 705 P.2d at 1129.

There are sound reasons for not permitting a prosecutor to make this kind of argument to a jury that is making a life or death decision. First, it should be remembered that capital *punishment,* as the term implies, is imposed in order to punish for bad deeds already committed, not to cull out villains who are thought by state officials to be dangerous in the future. It must also be remembered that state's attorneys are powerful authority figures, representatives of the sovereign, and recognized as having special knowledge and sound judgment in the field of criminal justice. So, when the attorney for the state is allowed to stand up and address jurors, telling them that the only way to save the lives of innocent victims in the future is to terminate the life of the offender, such rhetoric is powerful indeed, almost irresistible. When this kind of argument is allowed, the critical decision of life or death tends to become more the state's than the jury's. In

---

[1]Flanagan v. State, 104 Nev. 105, 754 P.2d 836 (1988); Pellegrini v. State, 104 Nev. 625, 764 P.2d 484 (1988); Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985).

any event, although there may be arguments to the contrary, the established case law in Nevada bars this kind of argument by prosecuting attorneys.

Today, without stating any reasons, without stating any authority[2] and without expressly overruling *Collier* and the other cases, we approve the following argument: "[T]here's only one way to make sure that the person does not commit another crime like this . . . and that is to impose the death penalty on Mr. Haberstroh." To say, as the majority opinion does, that this kind of statement does not "violate the dictates of *Collier*" is to ignore the plain dictates of *Collier*, which clearly proclaim that a prosecutor's arguing that the death penalty should be imposed so that the defendant will not "kill again" is impermissible. What we disapprove of yesterday, we approve of today.

I should probably stop here and simply say that I disagree with the majority opinion because I believe that if we are going to overrule *Collier, Flanagan* and *Pellegrini,* we should do so frankly and expressly and state reasons for our abrupt change of mind; but there is more to the majority opinion than this. The majority now allows the kind of argument prohibited by *Collier* but imposes a precondition, namely, that there be in the record some "evidence" of "past misconduct." I should think that in almost all death penalty cases there will be evidence of aggravating circumstances in the form of past misconduct of the defendant. Thus the court and counsel must, under the rule today announced, decide in most cases whether the evidence supports "a reasonable inference that even incarceration will not deter[3] the

---

[2]The majority asks the reader to "see" the case of State v. Green, 81 Nev. 173, 400 P.2d 766 (1965). I am not sure why. This case holds that a juror's statement that "the dirty nigger got what he deserved" was not jury misconduct and that the prosecutor's argument that the defendant's drawing unemployment compensation was evidence of robbery were proper prosecutorial arguments. I should like to know a little more about how this case supports the majority's position.

[3]I cannot imagine where the word *deter* comes from. The prosecuting attorney did not use the word "deter" nor did he mention the idea of deterrence in his argument. He did not do so because special deterrence is not involved in a death case. Killing Haberstroh does not *deter* him from future killing, it simply makes it impossible for him to commit any more crimes. *Deter* comes from the same word root as *ter*rify and means to discourage future behavior by means of threat or fear. This, no doubt, is why the prosecutor was not talking about *deterring* Haberstroh from killing again—a dead person cannot be discouraged by fear of punishment—but rather about *preventing* him from ever "killing again." What the majority may be, or rather must be, talking about is permanent quarantine—eradicating the undesirables of the world as a social prophylactic. If this be the case, then, again, I say why do they not say so? The proper rule of this case then would become: "If the prosecuting attorney has reason to believe

defendant from endangering others' lives," before a determination can be made as to whether this kind of argument can be properly made. We will now be getting appeals on whether the evidence upon which the prosecutor makes the prediction supports a "reasonable inference" that the convict must be executed. I think that if we are now going to permit the kind of argument now prohibited by *Collier,* we should outrightly do so without imposing this kind of vague and restricting condition on the district attorney and the court.

Whether we are talking about "deterring" Haberstroh or exterminating him because we think he is dangerous, the fact that there may be some evidence of past misconduct in the record should not be enough to justify departure from our well-established rule. The prosecuting attorney may very well be a better prognosticator than the average juror and better able to make predictions about what a given defendant is going to do in the future; but it is the jury that should be deciding who lives and who dies and not the "expert" who claims that no one will be safe for so long as the defendant lives. The prosecutor's prediction of future homicidal conduct, however sound, does not relate to the issue faced by the jury, namely, does this person deserve to die?

Notwithstanding the improper argument in this case I vote with the majority because I do not think that the level of prejudice reached in *Collier* and *Flanagan* has been reached in this case.[4] I

---

that the defendant is going to kill again if not eradicated, then this argument may be pressed to the jury." I do not argue in this concurrence whether this utilitarian approach should be adopted or not. I only say that if this is what the majority opinion is about, it should be expressed openly.

[4]In *Flanagan* and *Collier,* the prosecutors improperly compared the defendants to two of Nevada's more notable murderers, thereby implying that rehabilitation was impossible. For example, in *Collier* the prosecutor sought to promote a conclusion that the defendant might kill again in prison (as had the notable murderer cited by the prosecutor) and that he therefore should be put to death. This court found that such comments were inappropriate and diverted the jury's attention from its proper purpose.

In the case at bar the prosecutor compared the defendant's prospects of rehabilitation to negotiating with Libyan leader Khadafy. I do not see the use of the simile as creating the kind of prejudice created in *Collier* by the prosecutor's comparing Collier to Patrick McKenna. This case does not contain the level of prejudice and impropriety found in *Collier* and *Flanagan.* Here, the prosecutor made a general statement about Khadafy, but he did not continue to pursue this path in such a manner as to invoke the passions and emotions of the jury to such a degree as to render the proceedings against Haberstroh to be inherently unfair.

In *Collier* this court held that the trial court's failure to control the prosecutorial misconduct, and the time limitation imposed on closing arguments, constituted errors which in combination with each other denied the defendant a fair sentencing hearing. In *Flanagan* the court held that the cumulative effect of the prosecutor's extensive misconduct was of such

set forth the reason for concurring rather than dissenting in the margin because I do not want to distract the reader from the point in writing this concurrence, namely that the majority sets out to overrule or announce a major exception to the firmly established rule stated in *Collier, Flanagan* and *Pellegrini,* without elaborating a coherent new rule to be followed and without stating any reasons for the changes in our law that might be intended effected by this opinion.

---

magnitude as to render the defendant's sentencing hearing fundamentally unfair. The case at bar is similarly a case in which prosecutor misconduct appears to be the only issue. Since the degree and type of misconduct here is not as egregious as *Flanagan,* and is not coupled with other errors as in *Collier,* Haberstroh's need not, in my view, be set aside.