*1138 Rose, J.,
concurring:
I consider some of the remarks made by the prosecutor in closing argument to be improper but not to require a reversal of this case. In all other respects, I concur with the opinion of the majority.
The specific remarks are set out in full in the majority opinion. At one point, the prosecutor stated that if the verdict of death was returned, the jurors could feel good about it and hold their head high when they walk out of the building, presumably back into the community. The prosecutor continued by saying that if asked what they did in this case the jurors can respond that they sentenced the defendant to death and did justice — again presumably responding to the expectations of the community. Although artfully phrased as the juror responding to inquiries or impressions of the community, the argument is basically that a conviction will satisfy the conscience of the community and the juror can be proud in giving the community what it wants. Conversely, if a conviction is not secured, the expectations of the community will not be satisfied and justice will not have been done.
We have held that it is improper for the prosecution to refer to the jury as representatives of the community or the conscience of the community. Haberstroh v. State, 105 Nev. 739, 742, 782 P.2d 1343, 1345 (1989); Snow v. State, 101 Nev. 439, 447, 705 P.2d 632, 638 (1985). The reason for this is simple. A juror should determine if the evidence in court establishes the defendant’s guilt beyond a reasonable doubt and not be influenced about what the community wants or that he or she must take certain action because the juror is the conscience or representative of the community.
In Collier v. State, 101 Nev. 473, 479, 705 P.2d 1126, 1130 (1985), we held that it was improper to argue to a jury that “if they wish to be deemed ‘moral’ and ‘caring,’ then they must approach their duties in anger and give the community what it ‘needs.’ ” In Flanagan v. State, 104 Nev. 105, 111, 754 P.2d 836, 840 (1988), we strongly disapproved of the prosecutor’s statement, “If we don’t punish, then society is going to laugh at us.” Again, the reason is that we want the jurors to focus on the quantum of evidence presented against the defendant in court and not to enforce the community morals or to give the community what it desires. Although the prosecutor never specifically used the words moral or community conscience, the argument clearly indicates that the jurors will be giving the community what it expects and desires if they convict the defendant.
I am also concerned about the emotional remarks the prosecutor made in referring to the impact of the killing on the victim’s family. In Homick v. State, 108 Nev. 127, 136, 825 P.2d 600, *1139 606 (1992), this court expressly adopted Payne v. Tennessee, 501 U.S. 808 (1991), a United States Supreme Court decision which concluded that “evidence about the victim and about the impact of the murder on the victim’s family is relevant to the jury’s decision as to whether or not the death penalty should be imposed.” Payne, 501 U.S. at 827. While I agree with our decision in Homick that testimony should be received to show that the victim is an individual whose death represents a unique loss to society, I am concerned that the presentation of overly emotional victim impact testimony followed by emotional prosecutorial advocacy will unfairly prejudice the jury. I believe that the remarks made in this case are at or beyond the outside limit of the type of victim impact argument that should be permitted.
Although I find these specific remarks improper, I do not think they so infected the proceedings with unfairness as to require a reversal of this conviction. Further, there was compelling evidence upon which the jury could easily conclude, beyond a reasonable doubt, that the appellant was guilty as charged and assessed the death penalty.