Springer, J.,
dissenting:
I agree with the majority’s holding that improper prosecutorial comments on a defendant’s constitutionally protected speech, activities, or beliefs are subject to harmless error analysis if such comments are made during the guilt phase of trial. I cannot, however, join in the majority’s conclusion that the improper prosecutorial comments in this case (e.g., that the defendant was a devil worshipper, a member of a witches’ coven, and a practitioner of black magic) are not of a magnitude that would have adversely “influenced” a jury. To me this is far from the kind of improper character evidence that is harmless beyond a reasonable doubt.
The majority points out that defendants’ diabolical activities were mitigated somewhat by defense counsel’s cross-examination in which a valiant attempt was made to convince the jury that these “wizard[sj” did not “burn or kill any cats” or “go skinning cats” or set “places afire.” Defense counsel’s attempt to portray the devil’s allies as benign and “peaceful” was more than overcome by the prosecutor’s description of the defendants as “devil worshippers” whose “friends [were] gang members” who with their “devil-worshipping buddies” were “hatching a diabolical plot, a diabolical plot to kill two good [as distinguished from diabolical] human beings.” (My emphasis.)
The majority does not think that the “jury gave these remarks much significance.” In coming to this conclusion, the majority, I take it, applied its rule that a jury may not be influenced by evidence of devil worship and conjecture about a “diabolical plot” if (a) the “defendant’s character is not relevant” and (b) the presence of some “expressly restricted circumstances.” I take exception. I see no way in which a jury would not be influenced by this kind of argument by the representative of the State of Nevada, even if I understood what was meant by “character is not relevant” and “expressly restricted circumstances.”
The majority characterizes the evidence against Flanagan and Moore as “ ‘overwhelming.’ ” I would have to agree that, as put by the majority, “ ‘Flanagan, Moore and four other co-defendants killed the Gordons.’ ” Quoting Flanagan v. State, 107 Nev. 243, 245, 810 P.2d 759, 760 (1991) (Flanagan II), vacated, 503 U.S. 930, 931 (1992). But, this misses the point, which is that Flanagan and Moore had the right to be tried, and to *1425 have the nature of their participation in a six-person killing judged by a jury that was not under the influence of the clearly prejudicial and unfairly damaging argument of the prosecution. If the prosecution had not engaged such a zealous and intentional pursuit of the “diabolical” characters of Flanagan and Moore, the jury in this case would have been in a much better position to pass fair judgment on the degree of guilt of these defendants and on their punishment.
In our first opinion, Flanagan v. State, 104 Nev. 105, 107, 754 P.2d 836, 837 (1988) (Flanagan I), we noted that “Flanagan and the [five] others broke into the Gordon residence and accomplished their deadly objective,” which was to kill Flanagan’s grandparents for insurance proceeds. With the other four murderers and Flanagan and Moore being improperly branded as devil worshippers, it does not appear to me that the majority is justified in so blithely concluding that the jury was not “influenced” by the fact that Flanagan and Moore were working for or with the devil.
The majority recognizes that “improperly admitted character evidence will influence a jury in setting a punishment” and that “[t]his risk is unacceptably high when the defendant . . . faces the death penalty.” It seems to me that the liability stage and the penalty stage of this trial cannot be safely separated when it comes to “improperly admitted character evidence” in this case and that the risk of prejudice is unacceptably high. I would order a new trial in this case.[1]

I note my disagreement with the majority’s acceptance of “ ‘knowingly creating] a great risk of death to more than one person by means of a weapon, device or course of action which would normally be hazardous to the lives of more than one person.’ ” Quoting NRS 200.033(3). Six persons were involved in the shooting of two victims. There is absolutely nothing done by any of these killers that would normally be dangerous to the lives of more than one person. One or more persons killed two other persons. If there is something that Flanagan or Moore or the other four did that was “normally [ ] hazardous” to the lives of other people, I cannot identify what hazardous activity was being engaged in.
Even in the absence of this aggravating factor, however, I would not conclude that these defendants were found to be death eligible and that the erroneous thinking on this point displayed by the majority does, of itself, justify reversal of the death penalty judgment.