SCOTT L., A MINOR, APPELLANT, *v.* THE
STATE OF NEVADA, RESPONDENT.

No. 18541

August 25, 1988                                        760 P.2d 134

---

*H. Leon Simon,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *Timothy O'Brien,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, SPRINGER, J.:

Appellant Scott L., a sixteen-year-old high school student, was heavily involved in the sale of marijuana to his fellow students. Following a sale of marijuana to an undercover drug enforcement agent the minor was adjudicated a delinquent and committed by the juvenile court to the Spring Mountain Youth Camp, a "place of involuntary confinement and punitive incarceration." *See* Glenda Kay S., A Minor v. State, 103 Nev. 53, 732 P.2d 1356 (1987). The sole reason given by the presiding juvenile court

judge for such disposition was the "deterrent effect" of incarcerating a youthful drug dealer. We approve of the juvenile court's decision in this case and affirm its dispositional order.

The juvenile court judge wisely and properly *(See Glenda Kay)* stated in open court his reasons for ordering this punitive disposition, namely, that "[t]here is a deterrent effect by incarcerating" a youth who engages in the sale of marijuana to other minors. Said the judge:

> When children sell [drugs] to children, the other children in the community are watching, all right. There is a deterrent effect by incarcerating. . . .
>
> . . . .
>
> [B]y removal from the community, removing them from their friends, kids talk, they know who is gone, they know who is back in the community. . . .
>
> [I]t is in the public's interest to institutionalize this young man for at least the first semester of the school year, because I believe very strongly that it is "in order to deter them or others."

The minor claims, citing *Glenda Kay,* above, that there is not in this case "sufficient reason to depart from the presumption that a child should be placed in his home" and to put him in confinement.[1]

We deem the deterrence of others from engaging in drug sales in our schools to be "sufficient reason" to incarcerate a youth adjudged guilty of such criminal conduct, and we see the juvenile court as having acted in an eminently wise and prudent manner in deciding upon this disposition. *See Glenda Kay.*

Factors other than deterrence present themselves in justification of the juvenile court's removal of Scott from the community

---

[1]The minor also claims that the juvenile court judge erred by acting upon a "self-imposed policy of sending all children who commit such acts to an institution, with rare exception." The judge did observe that "approximately every one of those children" who were involved in high school drug trafficking had been sent away. This observation does not show a fixed predisposition or policy on the judge's part. For this reason and because appellant has cited no authority to support this claim of error, we decline to consider the point. Cunningham v. State, 94 Nev. 128, 575 P.2d 936 (1978). We do note with some chagrin that appellant's counsel has misstated the record to us, saying that "the Judge stated on the record, 'I think on its own merits, he would have probably been sent home on probation by itself.' " The judge did not say this; Scott's mother did.

and his commitment to Spring Mountain. In *Glenda Kay* we noted that the integrity of the criminal law is maintained by seeing to it that those who commit crimes are punished. We noted also that punitive incarceration may be justified in juvenile cases for serious criminal violations because the youthful offender deserves to be punished.

To permit Scott to remain at home and escape any appreciable punitive sanction for so serious a crime would tend to be destructive of the integrity of the criminal law.[2] When the law is broken something must be done about it. The law must be vindicated; otherwise, it loses its meaning and effect as law. Scott is described in the record as a "middleman in drug sales" among high school students. If such a person can be adjudged guilty of drug sales in the schools and escape any punitive sanction, the law and its moral force are indeed in jeopardy. To maintain the integrity of our drug laws some punishment must follow, as it did here, from the violation of these laws.

We also mentioned in *Glenda Kay* that a criminal offender may be punished because he *deserves* it. Retribution or just deserts as a response to criminal law violation is thought by many jurists and social theorists to be archaic and inappropriate. We disagree. Although the juvenile court judge has in the present case eschewed the use of punishment *as punishment* in a juvenile court case, reason tells us that the juvenile court's decision to incarcerate could well have been grounded on the fact that Scott deserved to be punished. He has a previous juvenile record (carrying an illegal weapon). He was deeply involved in drug trafficking to minors. He was a disciplinary problem in school. It is hard to argue that Scott did not deserve to be removed from his home and school environment and confined in a youth camp. This is little enough punishment for a crime calling for a life sentence. NRS 423.321.

Finally, the record would support a conclusion by the juvenile court that the best interests of Scott would be served by this disposition. Spring Mountain has a regular high school educational program conducted by the Clark County School District

---

[2]It used to be argued that marijuana is not a dangerous drug and should not be legally banned. In today's drug-ridden society this argument is not often heard, and Nevada's legislature has inscribed a law which attaches life imprisonment as a penalty for the sale or distribution of this drug. NRS 453.321. The people of this state have spoken through their elected representatives in such a manner as to obviate any discussion of the degree of culpability attached to this crime. The minor, in his brief, concedes that this is indeed, a "serious" crime.

and offers several treatment and rehabilitation programs likely to be of benefit to Scott. Also we must not ignore the value of punishment itself as a rehabilitative tool. Using punishment as a means for changing youthful behavior is not exactly a new phenomenon; and, punishment must be recognized as a valid and useful rehabilitative tool. This court has recognized that "punishment has in many cases a rehabilitative effect on the child and . . . will serve the child's best interests as well as the state's." In the Matter of Seven Minors, 99 Nev. 427, 664 P.2d 947 (1983).

> Enforcing the state's interests in a manner designed to hold juveniles responsible for their violations of the criminal laws need not by any means dilute the strength of educative and rehabilitative measures properly taken by the juvenile courts in attempting to socialize and civilize errant youth. Guidance, understanding and care still have the same place in juvenile court proceedings. Even youths who commit more serious crimes can profit from a separation from adult offenders and from the special treatment and special programs which are available in juvenile courts; this does not mean that they should go unpunished.

*Seven Minors,* 99 Nev. at 432, 664 P.2d at 951.

In *Seven Minors* we recognized the beneficence and utility of "educative and rehabilitative measures properly taken by the juvenile court," but noted firmly that "the court's duty to the public is paramount." The juvenile court judge in the present case was correct in declaring that it was "in the public's interest to institutionalize this young man," focusing on the deterrent effect that this disposition would have on others.

All in all the "paramount" public interest purposes of the juvenile courts appear to have been optimally served by the juvenile court judge's decision "to institutionalize this young man" for purposes of deterrence. As stated above, other public interests are also served as are the interests of the delinquent. The juvenile judge in this case, the Honorable John S. McGroarty, had every justification for deciding as he did. We affirm the order of commitment.

GUNDERSON, C. J., and STEFFEN, YOUNG, and MOWBRAY, JJ., concur.