MARK STEWART EMMONS, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 20323

March 6, 1991                                807 P.2d 718

*Schieck & Derke,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, *Daniel M. Seaton,* Deputy District Attorney, Clark County, for Respondent.

# OPINION

*Per Curiam:*

Appellant Mark Stewart Emmons was charged with murder in the stabbing death of Jack Perkins, Jr. He and an accomplice, Edward Hassett, hitched a ride with Perkins in Tucson, Arizona, on December 26, 1985. While driving across the Nevada desert, the two men decided to rob Perkins. In the process, Emmons stabbed Perkins. He and Hassett took Perkins' possessions and left him for dead. The next day, Emmons pawned some of Perkins' belongings in Las Vegas. Emmons and Hassett were arrested while driving Perkins' truck in Bellingham, Washington, a few days later. Emmons was charged with murder with use of a deadly weapon. His first trial resulted in a mistrial. Following his second trial, Emmons was found guilty of first degree murder with use of a deadly weapon and was sentenced to die.

On appeal, Emmons alleges that numerous prejudicial errors occurred during the guilt and penalty phases of his second trial. Because we hold that none of Emmons' contentions have merit, we affirm his conviction and sentence.

Emmons first contends that the district court abused its discretion during the guilt phase by allowing the deputy county medical examiner to render an expert opinion regarding radiological and orthopedic identification of Perkins' remains. Emmons contends that the medical examiner was not qualified as an expert as required by NRS 50.275. He further contends that, absent a foundational finding that the medical examiner was qualified as an expert, admission of her testimony was an abuse of discretion and was prejudicial to him because without her testimony, the state could not establish the element of the corpus delicti.

Decisions regarding the admissibility of expert testimony lie within the discretion of the trial court. Childers v. State, 100 Nev. 280, 283, 680 P.2d 598, 600 (1984). Moreover, NRS

50.275 is not limited to experts with special training, but includes those who have gained expertise through "special knowledge, skill, *experience,* training or education . . . ." (Emphasis added.) Here, the court impliedly determined that the examiner was qualified as an expert. The medical examiner, a forensic pathologist, testified that she had gained general knowledge of radiology and orthopedics through her medical training, and gained expertise through her experience in the field. We hold that the court did not abuse its discretion in admitting the medical examiner's testimony because she had received on-the-job training and thus qualified as an expert. *Cf.* Watson v. State, 94 Nev. 261, 264, 578 P.2d 753, 755-56 (1978).

Emmons further contends that the district court committed reversible error during the guilt phase by allowing the medical examiner to testify regarding a radiologist's concurring opinion and by admitting into evidence a letter by the radiologist to support the medical examiner's opinion. Emmons contends that the inculpatory testimony and letter were inadmissible hearsay and that their admission violated his sixth amendment right to confront witnesses.

Hearsay evidence is evidence of a statement made other than by a testifying witness which is offered to prove the truth of the matter asserted. NRS 51.035. The general rule is that hearsay is inadmissible. NRS 51.065. However, NRS 51.075(1) provides that "[a] statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer assurances of accuracy not likely to be enhanced by calling the declarant as a witness, even though [the declarant] is available."

Here, the radiologist was a disinterested witness with no apparent motive to lie. Therefore, under the circumstances of this case, we hold that testimony regarding the radiologist's opinion was admissible under the general exception to the hearsay rule. *Cf.* Johnstone v. State, 92 Nev. 241, 244-45, 548 P.2d 1362, 1364 (1976).

With respect to the radiologist's letter, we reject the state's contention that it falls under the "record of regularly conducted activity" exception to the hearsay rule, because the state failed to establish that the letter was written "in the course of a regularly conducted activity" as required by NRS 51.135(1). *See* Hamm v. Sheriff, 90 Nev. 252, 254, 523 P.2d 1301, 1302 (1974). Nevertheless, for the same reasons we hold the radiologist's opinion

admissible, we hold that the radiologist's letter was admissible under the general exception to the hearsay rule.

Emmons next contends that the district court committed reversible error during the guilt phase by failing to suppress the testimony of inmate informant James Litteral. While housed next to Emmons in prison, Litteral, who had a reputation for being a "snitch," contacted law enforcement personnel and sent them written notes containing information he had obtained from Emmons. Emmons contends that Litteral was functioning on behalf of law enforcement by acting as an agent of the state, and that therefore Litteral was conducting the functional equivalent of illegal custodial interrogations. He maintains that admission of Litteral's testimony violated his due process rights under the Nevada Constitution and the fifth amendment of the United States Constitution. He states that this constitutional violation prejudiced him because he claims that without Litteral's testimony, his accomplice's testimony was uncorroborated.

"[W]hen a jailhouse informant elicits incriminating information from an accused while acting on his own initiative and not pursuant to any specific prior agreement with law enforcement, the incriminating statements may be received in evidence against the accused without violating his state or federal constitutional rights." Thompson v. State, 105 Nev. 151, 156, 771 P.2d 592, 596 (1989).

In this case, Litteral was not placed next to Emmons intentionally. Moreover, law enforcement did not contact Litteral—he went to them of his own accord. In addition, Litteral testified that Emmons had volunteered the information. Therefore, we hold that the conduct in this case did not rise to the level of "custodial interrogation." Accordingly, it was not constitutionally mandated that Emmons be given his *Miranda* warnings. We conclude that no constitutional rights were violated, and the court did not err in failing to suppress Litteral's testimony.

Emmons next contends that the district court committed reversible error during the guilt phase by denying a motion *in limine* and allowing the prosecutor to elicit evidence of Emmons' prior criminal conduct. Over defense objections, Officer David Richards testified at trial that he was told to regard Emmons as armed and dangerous. He also testified that, after being arrested in Washington, Emmons said, among other things, "I'm not going back." Emmons contends that this testimony constituted inadmissible character evidence, the admission of which violated his rights to due process and a fair trial under the Nevada and United States Constitutions.

If a jury could reasonably infer from the evidence presented that the accused previously engaged in criminal activity, then reference to the accused's prior criminal history violates the accused's due process rights and constitutes reversible error. Witherow v. State, 104 Nev. 721, 724, 765 P.2d 1153, 1155 (1988). In this case, however, reference to Emmons' being armed and dangerous was not a clear reference to his prior criminal history. The jury could just as likely have associated Emmons' being armed and dangerous with the crime for which he was being sought, rather than with any past criminal activity. The statement, "I won't go back," is even more ambiguous. The jury could have inferred from this statement that Emmons did not want to return to Nevada, where the arrest warrant had been issued. It is unlikely the jury took it to be a reference to Emmons' prior criminal history. Accordingly, we hold that the testimony was not improperly admitted.

Emmons also contends that the district court committed reversible error during the guilt phase by allowing the prosecutor to elicit information concerning his drug usage. Prior to trial, the defense filed a motion in limine to preclude the state from introducing into evidence testimony which allegedly related to Emmons' having offered to sell or purchase marijuana from witness David Carrell. In response, the state stipulated to not ask questions of Carrell "which would elicit testimony regarding the defendant's use of marijuana." Nevertheless, at trial the prosecutor asked Officer David Richards, "And how about whether or not he was under the influence of drugs?" Richards responded, "A little bit on the drugs. His pupils were _____ " before defense counsel could interject an objection. The judge sustained the objection but denied a motion for mistrial even though he concluded that the prosecutor had asked about drugs deliberately. Emmons argues that admission of this improper testimony and denial of his motion for mistrial deprived him of a fair trial in violation of the Nevada and United States Constitutions.

It is within the trial court's discretion to grant or deny a mistrial. Owens v. State, 96 Nev. 880, 883, 620 P.2d 1236, 1238 (1980). Although the state claims it had only stipulated to not ask questions of Carrell, we disagree with its claim that the testimony elicited did not violate the motion in limine. By the words of its own stipulation, the state was aware that defense counsel objected to testimony regarding Emmons' drug use, rather than testimony by Carrell only. Furthermore, the state's claim that it was surprised by the officer's testimony is implausible. As the trial judge noted, the prosecutor deliberately asked Officer Richards whether

he observed Emmons to be on drugs. The state's claim that it expected the answer to be "no" based on the police report is unlikely since the state presumably interviewed the witness prior to his testifying.

The state argues that, even if admission of the evidence was erroneous, the error was cured by a cautioning instruction given to the jury which told it to disregard evidence to which an objection had been sustained. We hold that the instruction acted as an insufficient cure. Prior Nevada cases in which instructions were found to cure improper remarks involved inadvertent remarks not solicited by the prosecution which were cured by an immediate and specific admonition by the judge. *See, e.g.,* Allen v. State, 99 Nev. 485, 490, 665 P.2d 238, 241-42 (1983); *Owens,* 96 Nev. at 883, 620 P.2d at 1238. By contrast, the remark in this case was not inadvertent or innocuous, but was instead a deliberately solicited remark made in response to specific questioning by the prosecution. In addition, the remark was not followed immediately by a specific admonition from the judge; rather, it was allowed in without drawing attention to its impropriety.

Nevertheless, despite the state's indiscretion in soliciting information in violation of the motion in limine, we hold that the error was harmless. To begin, this was just a single sentence in a four-day trial. The officer was cut off by defense counsel before he went into any detail. Furthermore, the officer's response was not that strong. In light of the other evidence supporting a finding of guilt, the error was not prejudicial.

Emmons next contends that the district court committed reversible error by allowing the prosecutor to argue about escape at the penalty hearing. At the hearing, the prosecutor described in detail Emmons' prior attempts at the plans for escape, and stated that although the penalty would not change the past, "what it might change is the future."

Emmons argues that the state's repeated references to his prior escape attempts and speculation as to what might happen in the future are improper under Nevada case law. He further argues that the state's argument violated the eighth amendment's heightened need for reliability in death cases and deprived him of a fundamentally fair proceeding as required under the due process clause of the Nevada Constitution and the fourteenth amendment of the United States Constitution.

The state's first response is that defense counsel did not object to the prosecutor's argument at the time it was given. As a

general rule, failure to object below bars appellate review; but, we may address plain error or issues of constitutional dimension *sua sponte*. Bradley v. Romeo, 102 Nev. 103, 105, 716 P.2d 227, 228 (1986); McCullough v. State, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983). Moreover, we have held that "where a life is at stake, we will consider the allegations of misconduct as if there had been compliance with the contemporaneous objection rule." Flanagan v. State, 104 Nev. 105, 108, 754 P.2d 836, 837 (1988). In this case, prior to argument defense counsel moved unsuccessfully to preclude the state from arguing the possibility of escape to the jury as a basis for imposing the death penalty. We hold that the motion below constituted a sufficient objection to preserve this issue for appellate review.

The state also responds that the argument was proper commentary on evidence of the defendant's character and that no reference to the future possibility of escape was made. Even if there was a reference to the future possibility of escape, the state argues, it was a proper inference based on the evidence.

Emmons urges us to follow Collier v. State, 101 Nev. 473, 479, 705 P.2d 1126, 1130 (1985), *cert. denied,* 486 U.S. 1036 (1988), in which we stated that "[t]he prospect of escape is not part of the calculus that the jury should consider in determining a defendant's sentence." *Accord Flanagan,* 104 Nev. at 108, 754 P.2d at 838. Recently, however, we rejected a strict interpretation of *Collier* and *Flanagan* and held that where there is evidence "of a defendant's past conduct which supports a reasonable inference that even incarceration will not deter the defendant from endangering others' lives, a prosecutor is entitled to ask the jury to draw that inference." Haberstroh v. State, 105 Nev. 739, 741, 782 P.2d 1343, 1344 (1989). Pursuant to the holding of *Haberstroh,* the prosecutor's argument in this case was allowable because it was reasonable to infer from the evidence of Emmons' past conduct that he might escape in the future. Moreover, it is within the trial court's discretion to determine the admissibility of evidence. Allen v. State, 99 Nev. 485, 489, 665 P.2d 238, 240 (1983). Therefore, we hold that the argument regarding escape was properly admitted.

Emmons further contends that the district court committed reversible error at the penalty hearing by admitting notes from an Elko jail informant regarding Emmons' escape attempts. The day before the penalty hearing, the state informed defense counsel of its intent to call two Elko Sheriff's officers regarding Emmons' attempts to escape while in prison and to introduce notes received by the officers from Emmons' fellow inmate David Abranski. A

defense objection based on lack of notice and on the notes' unreliability was overruled, and the evidence was admitted.

Emmons contends that just as prior notice to the accused is required before the state can introduce evidence of aggravating circumstances, the due process clause of the United States Constitution also requires that the state give prior notice of its intent to introduce additional relevant evidence, such as the character evidence at issue here. He submits that one day's notice does not meet the requirements of due process. He further contends that the notes from Abranski were of dubious nature and that their admission denied him due process. He contends that because he was surprised by the introduction of evidence at the last minute, he was denied the opportunity to rebut the evidence, and was therefore prejudiced.

NRS 175.552 provides that at the penalty hearing, ''[t]he state may introduce evidence of additional aggravating circumstances . . . only if it has been disclosed to the defendant before the commencement of the penalty hearing.'' We have held that ''the purpose of the statute is to provide the accused notice and to insure due process so he can meet any new evidence which may be presented during the penalty hearing.'' Deutscher v. State, 95 Nev. 669, 678, 601 P.2d 407, 413 (1979) (emphasis added). Consistent with the constitutional requirements of due process, defendants should be notified of any and all evidence to be presented during the penalty hearing. Although the state in this case did give the accused notice before the commencement of the penalty hearing, it was only one day's notice. We hold that the notice given in this case was inadequate to meet the requirements of due process. The evidence was therefore improperly admitted. *Cf.* Browning v. State, 104 Nev. 269, 273 n.2, 757 P.2d 351, 353 n.2 (1988); Rogers v. State, 101 Nev. 457, 466-67, 705 P.2d 664, 671 (1985), *cert. denied,* 476 U.S. 1130 (1986).

Because the error in admitting the evidence violated Emmons' constitutional rights to due process, the standard for determining whether that error was harmless requires that it be harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967). *See also* Weathers v. State, 105 Nev. 199, 202, 772 P.2d 1294, 1297 (1989). Applying this standard to the instant case, although Emmons was denied the opportunity to prepare a proper rebuttal, we hold that the error was harmless beyond a reasonable doubt. In addition to the notes, other substantial evidence regarding Emmons' planned or attempted escapes was introduced: the officers' testimony that a piece of metal was found

in Emmons' jail cell and that Emmons was observed on a wall ledge in the recreation yard. Therefore, the error in admitting the evidence does not warrant reversal. Having found no prejudicial errors of constitutional or lesser magnitude in Emmons' trial or penalty hearing, we hereby affirm his conviction of first degree murder with use of a deadly weapon and sentence of death.