JAMES EDWARD GRIEGO, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 21815

April 27, 1995                                    893 P.2d 995

*Xavier Gonzales,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *James Tufteland,* Deputy District Attorney, Clark County, for Respondent.

446

## OPINION

By the Court, YOUNG, J.:

The State charged appellant James Edward Griego ("Griego") with sixteen counts of sexual assault with a minor under fourteen years of age and five counts of lewdness with a minor. He stood accused of forcing two neighborhood children, John and William M., into various sex acts over a period of time and of fondling Robert C., a third neighborhood child. A jury convicted Griego of twelve counts of sexual assault with a minor under fourteen years of age and three counts of lewdness with a minor. He received consecutive sentences of life with the possibility of parole for each of the sexual assault convictions and ten years for each of the lewdness convictions.

On appeal, Griego argues, *inter alia,* that: (1) the district court erred by failing to grant his motion for a mistrial following a reference by the prosecutor in front of the jury that Griego was incarcerated; (2) his sentences violate the eighth amendment; (3) the evidence as to count XXI was insufficient to sustain a conviction; (4) Robert C. was incompetent to testify; (5) the district court erred in denying Griego's motion to sever the count involving Robert C. from the counts involving John and William M.; and (6) the district court erred by denying Griego's request to have a defense expert in psychiatry or psychology examine John and William M.

### MOTION FOR MISTRIAL

During cross-examination, Griego stated that he believed the

father of two of the children was "out to get him." The prosecutor replied, "Okay. And that's why you are in jail; is that correct?" Defense counsel immediately moved for a mistrial. The district court denied the motion, stating that an officer had been escorting Griego in and out of the courtroom and that surely the jury knew he was in custody.

Griego's assertion of error cannot prevail. The jury knew that Griego was in custody and the oral reference by the prosecutor simply was additional proof of what the jury already knew. Prejudice does not result from the jury hearing proof of what it has already seen. *See* Leonard v. State, 108 Nev. 79, 824 P.2d 287 (1992). We also note that prior to the prosecution's reference that Griego was in custody, two of Griego's own witnesses remarked that he was in jail. We therefore hold that the district court properly denied Griego's motion for a mistrial.

## EIGHTH AMENDMENT

Griego argues that his sentences violate the eighth amendment, asserting that they only serve as retribution.

Griego's argument is not convincing. In Scott L., A Minor v. State, 104 Nev. 419, 422, 760 P.2d 134, 136 (1988), we stated that "[r]etribution or just deserts as a response to criminal law violation is thought by many jurists and social theorists to be archaic and inappropriate. We disagree." *Id.* It is true that Griego received the mandatory sentence for the sexual assault convictions and the maximum sentence for the lewdness convictions. NRS 200.366(2)(c); NRS 201.230(1). However, we will not superimpose our views on lawful sentences pronounced by district court judges, even if we might advocate a more lenient sentence. Sims v. State, 107 Nev. 438, 440, 814 P.2d 63, 64 (1991).

Moreover, a sentence within the statutory limits is not cruel and unusual punishment where the statute itself is constitutional. Lloyd v. State, 94 Nev. 167, 170, 576 P.2d 740, 742 (1978). Griego's sentence on each count is within the statutory limit and he does not challenge the constitutionality of the sentencing statutes. We therefore find no merit in this argument.

## SUFFICIENCY OF THE EVIDENCE

Griego argues that the State presented insufficient evidence upon which to convict him of count XXI, which charged him with lewdness with a minor (Robert C.). Griego argues that inconsistencies in Robert C.'s testimony rendered the evidence insufficient to convict him.

The record reveals only two inconsistencies involving Robert C.'s testimony. First, Robert C. was unclear as to when he told his parents that Griego had fondled him; he testified at one point that he told his mother right away and at another point that he told his parents a few days after the incident. However, this court has acknowledged that children are often unable to articulate specific times of events. *See* Cunningham v. State, 100 Nev. 396, 400, 683 P.2d 500, 502 (1984). Robert C.'s uncertainty about the time of reporting the incident does not render the evidence insufficient to convict Griego on this count.

Second, Robert C. gave conflicting testimony regarding whether Griego had fondled him through the outside or the inside of his clothing. We conclude that this inconsistency did not prejudice Griego, as he was charged with simply fondling Robert C.; the charge did not specify whether the fondling was on the outside or the inside of Robert C.'s clothing.

Griego bolsters his allegation of insufficient evidence by directing our attention to the fact that several young people from his neighborhood testified that he never exhibited any sexual deviancy toward them. It is within the province of the jury to determine the credibility and weight of conflicting testimony and we will not disturb a jury's findings where substantial evidence supports the verdict. Rice v. State, 108 Nev. 43, 45, 824 P.2d 281, 282 (1992). Here, substantial evidence supported Griego's conviction on count XXI and we decline to disturb that conviction.

### ROBERT C.'S COMPETENCE TO TESTIFY

Griego next argues that Robert C. was not competent to testify. The standard of competence which a child witness must demonstrate is that he has the capacity to receive just impressions and possesses the ability to relate them truthfully. Felix v. State, 109 Nev. 151, 173, 849 P.2d 220, 235 (1993). A trial court's finding of a child's competence to testify will not be disturbed absent a clear abuse of discretion. Moore v. State, 105 Nev. 378, 380, 776 P.2d 1235, 1237 (1989).

Griego did not request to conduct a *voir dire* examination of Robert C. prior to his testifying at trial, nor did he lodge an objection with the trial court regarding Robert C.'s competency. Failure to object at trial results in the issue not being properly preserved for appeal and precludes appellate review. Emmons v. State, 107 Nev. 53, 61, 807 P.2d 718, 723 (1991). We therefore decline to address this issue.

## SEVERANCE OF COUNTS

Griego contends that the court should have severed the count involving Robert C. from the other counts charging him with other acts of sexual assault because the charge was not based on the same act or transaction as the other charges, nor was the charge part of a common scheme or plan. We disagree.

Pursuant to NRS 173.115, offenses may be joined. NRS 173.115 provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are:
> 1. Based on the same act or transaction; or
> 2. Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Joinder in this case was proper. The offenses constituted transactions which constituted part of a common scheme under NRS 173.115 for the following reasons: the count involving Robert C. took place during the same time period as the other counts; the victims were all young boys; the victims were all friends of the Griego children; and Griego allegedly assaulted all three boys in Griego's home.

Additionally, the evidence was also admissible to show opportunity under NRS 48.045, which provides in relevant part:

> 2. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

If evidence of one count is admissible in evidence at a separate trial on another charge, the counts need not be severed and may be tried together. Mitchell v. State, 105 Nev. 735, 738, 782 P.2d 1340, 1342 (1989). Here, the district court could have admitted the evidence in the counts involving Robert C. in a separate trial on the counts involving John and William M. Furthermore, because several of the assaults took place in Griego's home, the district court could have allowed the evidence to show that Griego had an opportunity to assault the children. Thus, Griego's argument is unpersuasive.

Due to the foregoing, we find no error with regard to count

XXI (lewdness with a minor, Robert C.) and hereby affirm the conviction on that count only.

## ASSIGNMENTS OF ERROR AS TO JOHN AND WILLIAM M.

One assignment of error as to John and William M. is dispositive of all the counts involving them. Based on our recent decision in Keeney v. State, 109 Nev. 220, 850 P.2d 311 (1993), we conclude that the district court erred in denying Griego's request for an independent psychological examination of both John and William M. We stated in *Keeney* that

> it would be error to preclude a defendant from having an alleged child-victim examined by an expert in psychiatry or psychology if: (1) the State has employed such an expert; (2) the victim is not shown by compelling reasons to be in need of protection; (3) evidence of the crime has little or no corroboration beyond the testimony of the victim; and (4) there is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity.

*Keeney*, 109 Nev. at 226, 850 P.2d at 315. A review of each of these factors follows.

*Whether the State has employed an expert in psychiatry or psychology*

The State employed at least two experts in psychology who testified that John and William M. may have been victims of sexual assault. Thus, the first factor suggests that the district court should have permitted Griego to employ his own expert to examine those children.

*Victim not shown by compelling reasons to be in need of protection*

The record reflects no showing—compelling or otherwise—with regard to whether John and William M. needed protection from further examination by a mental health expert. Further, the district court in this case did not expressly find a compelling reason why Griego's mental health expert should not examine John and William M. We hold that should a district court conclude that compelling reasons exist to protect a child from examination by a defendant's mental health expert, the district court must expressly state those reasons on the record. Furthermore, we hold that absent an affirmative, compelling showing by the State that the alleged victim is in need of protection, the second *Keeney* factor favors examination of the alleged victim by a mental health expert employed by the defendant.

*Evidence of the crime has little or no corroboration beyond the testimony of the victim*

Although the evidence against Griego is sufficient to sustain a conviction, it is hardly overwhelming. Although some corroboration other than the alleged victims' testimony that a crime occurred exists, the quantity of such evidence is *de minimis*. Therefore, this factor too favors allowing Griego's expert an opportunity to examine John and William M.

*There is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity*

The veracity of John and William M. is questionable at best. First, at the preliminary hearing, Griego's counsel asked John M.: "Can you remember which things people told you and what you remember all by yourself?" John M. replied: "No." This reply unquestionably places John M.'s veracity in issue.[1]

Next, a multitude of defense witnesses who knew John and William M. testified that they habitually lied.

Finally, bad feelings between Griego and John and William M.'s father existed after Griego broke the father's jaw and refused to assist in paying the medical bills. This animosity calls John and William M.'s veracity into question.

"Numerous jurisdictions, as well as general notions of fairness, dictate that failure to provide equal access to expert psychiatric witnesses prejudices the defense." Lickey v. State, 108 Nev. 191, 194, 827 P.2d 824, 825 (1992). Having balanced the *Keeney* factors under the facts before us, we conclude that Griego is entitled to a new trial on the counts of conviction involving John and William M.

## CONCLUSION

We affirm the conviction on count XXI,[2] reverse the convictions on counts I, II, V, VI, and XI through XX,[3] and remand for a new trial on the reversed counts only.[4]

SPRINGER, J., concurs.

---

[1]We also question the reliability of John M.'s testimony insofar as the interview procedure used by the State may have been suggestive. *See Felix,* 109 Nev. at 174, 849 P.2d at 236. This concern would have been either confirmed or dispelled had the district court given Griego's mental health expert an opportunity to examine John M.

[2]Lewdness with a minor, Robert C.

[3]Counts I, II, V and VI charged sexual assault with a minor under fourteen years of age (John M.). Counts XI through XVIII charged sexual assault with a minor under fourteen years of age (William M.). Counts IX and XX charged lewdness with a minor (William M.).

[4]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.

Rose, J., concurring:

I concur in the result and in the opinion of the majority, except for that portion entitled Eighth Amendment. Since we are reversing the majority of Griego's convictions and remanding for a new trial, it is unnecessary to consider the validity of a sentence of more than 100 calendar years. That portion of the opinion seems to indicate that a sentence can be justified on the grounds of retribution alone, and I believe that is misleading. A judge sentencing a defendant must take into account many factors to make the punishment fit the crime, and retribution is just one of them.

Steffen, C. J., concurring in part and dissenting in part:

Believing strongly that the majority has misread and misapplied this court's opinion in Keeney v. State, 109 Nev. 220, 850 P.2d 311 (1993), I am forced to dissent from the reversal of Griego's sexual assault convictions.

Simply stated, the majority has reversed Griego's convictions for sexually assaulting the two minor victims, John and William M., under the erroneous conclusion that *Keeney* required the district judge to grant Griego's request to have John and William examined by a psychologist. In reaching its conclusion, the majority has failed to recognize both the burden of proof below and the standard of review that governs our review of this appeal.

The four *Keeney* factors weighed dispositively by the majority are qualitatively subject to a demonstration *by the defendant* that there is a *compelling reason* for having the minor victims examined by mental health professionals. *Keeney* qualified the four factors by placing them within the context of a compelling standard of proof shouldered by the defendant. *Keeney,* 109 Nev. at 224, 227, 850 P.2d at 314, 316.

The proper standard of review on the instant issue is also set forth in *Keeney* immediately following the recital of the four factors analyzed by the majority. We held that ''[i]t remains within the sound discretion of the district court whether to grant a defendant's request for a psychological examination of the victim. The district court should base its decision on the facts and circumstances of each case and the law as reaffirmed herein.'' *Id.* at 226, 850 P.2d at 315. It is thus clear that the standard of review the majority should have applied in deciding this issue is an abuse of discretion standard. Instead the majority simply substituted its own view of the weight of the proof and the facts for that of the trial judge and the jury.

In addition to the misperceived burden of proof and standard of review, I suggest that the majority's analysis of the record is seriously flawed. Illustrative of the premise is the majority's conclusion respecting the third *Keeney* factor, that corroborative

evidence of Griego's crimes, beyond the testimony of the two minor victims, is *de minimis*. First, Dr. Diane Goebel, a pediatrician, testified that John had anal fissures consistent with anal penetration or constipation. Second, pediatric nurse Katherine Peele testified that John had a wedge-shaped "tag" on the opening of his rectum caused by external trauma consistent with penetration. She also testified that William had a large healed scar with a fold of thickened skin on his rectum consistent with past trauma which could include penetration. Peele stated further that she had examined over 800 alleged victims of child sexual abuse and that William's rectal scar was the largest she had ever seen. This evidence is hardly *de minimis*.

Moreover, we have held that the testimony of a victim and a percipient witness "constitutes substantial evidence supporting the conviction." Washington v. State, 96 Nev. 305, 308, 608 P.2d 1101, 1103 (1980). The record reflects that the victim John M. testified as follows:

Q. Did anybody see you put your penis in Mr. Griego's butt?
A. My brother did.
Q. And what's your brother's name?
A. William.
Q. Did William ever see anything else happen between you and Mr. Griego?
A. He seen some other stuff, but I can't remember.
Q. Did you ever see anything between Mr. Griego and your brother William?
A. Yes.
Q. Can you tell us what you saw Mr. Griego do to your brother William?
A. I saw him suck on my brother's private before.
Q. When you say "private," what are you talking about?
A. Penis.
Q. And what else?
A. That's mostly all I saw.

The record also reflects the following testimony by the victim William M.:

Q. Did Mr. Griego do anything to your brother John?
A. Yes.
Q. What did you see him do to your brother John?
A. Well, I seen him try to put his penis up John's butt.
Q. Where were you when this would happen?
A. Sitting down.
    . . . .
Q. And what did you see happen?
A. He tried putting his penis up John's butt.

I suggest that the record evidence repels the notion embraced by the majority that the third *Keeney* factor was satisfied.

The majority, reweighing the facts and overruling the jury, have concluded that the facts demonstrate a reasonable basis for believing that the victims' mental or emotional state may have affected their veracity. The majority thus concludes that the fourth *Keeney* factor was also satisfied. Singling out a small part of John M.'s testimony on cross-examination wherein the child answered "no" to defense counsel's question, "[c]an you remember which things people told you and what you remember all by yourself," the majority reaches the remarkable conclusion that "this reply unquestionably places John M.'s veracity in issue."

I question the propriety of an appellate methodology that yields the conclusion, from a cold record, that John M.'s truthfulness was negatived by a quantitatively insignificant part of the child's overall testimony elicited under the stress of defense counsel's cross-examination. A review of the totality of John M.'s testimony explains why the jury, endowed with the office of fact finder in our criminal justice system, believed the young victim.

Similarly, the majority casts aside the deference usually accorded on review to live testimony and demeanor heard and observed by the jury. From the lifeless appellate record, the majority determines that a combination of the "multitude" of defense witnesses who described John and William M. as habitual liars, and the evidence of bad feelings between Griego and the father of the two victims, overrides the jury's "on site" determination that the two minor victims were being truthful.

According no deference to the district court's discretionary call and the discernment of veracity by the jury, the majority, who places its imprimatur on Griego's conviction of lewdness with one young neighborhood boy, Robert C., concludes that despite all the inferences to be drawn from the Robert C. incident, the veracity of the two other victims is sufficiently questionable to require a new trial after the victims have been examined by another mental health expert. I strongly disagree.

There are other reasons why I am troubled by the majority opinion. Succinctly stated, they are as follows:

(1) Despite the unanimous conclusion by this court, clearly evidenced and effectuated in *Keeney,* that Lickey v. State, 108 Nev. 191, 827 P.2d 824 (1992), needed to be retrenched, the majority effectually pledges re-obeisance to the very factors in *Lickey* that this court renounced in *Keeney*.

(a) The majority revitalizes the *Lickey* conclusion that "[n]umerous jurisdictions, as well as general notions of fairness, dictate that failure to provide equal access to expert psychiatric witnesses prejudices the defense." *Lickey,* 108 Nev. at 194, 827

P.2d at 825 (1992). The still-drying print from *Keeney* declared: "*Lickey* was never intended to create a simple equation (absent a compelling need to protect the child) granting a defendant the automatic right to have an alleged child-victim of sexual abuse examined by a defense psychiatrist or psychologist whenever the State has employed such experts. Such a mechanical balancing of the trial ledger would frequently subject children who are victims of sexual abuse to unfair, unnecessary trauma, and would constitute a needless and time-consuming expense unless the criteria enunciated in *Washington* [Washington v. State, 96 Nev. 305, 608 P.2d 1101 (1980)] exist." 109 Nev. at 226, 850 P.2d at 315. The majority appears to have disregarded *stare decisis* and reinstated the wooden formula that "lack of equal access = prejudicial error."

(b) The majority in the instant case declares "that absent an affirmative, compelling showing by the State that the alleged victim is in need of protection, the second *Keeney* factor favors examination of the alleged victim by a mental health expert employed by the defendant." *Keeney* held that "[o]ur conclusion in *Lickey* was not intended to place the burden on the State to demonstrate a compelling reason for denying a psychological examination in every sexual assault case. 109 Nev. at 226, 850 P.2d at 315. Moreover, we emphasized at least twice in *Keeney* that the burden is on the defendant to show, by compelling reasons, that the defendant is entitled to have a mental health expert examine the victims. 109 Nev. at 224, 227, 850 P.2d at 314, 316.

The majority has seemingly readopted the position originally embraced in *Lickey* and retrenched by *Keeney*. In *Keeney,* we quoted from *Lickey*: "'[U]nless competent evidence presents a compelling reason to protect the victim, it is error to deny a defendant the assistance of a defense psychologist or psychiatrist to examine the child-victim and testify at trial when the State is provided such assistance.'" 109 Nev. at 225, 850 P.2d at 314-15 (quoting *Lickey,* 108 Nev. at 195, 827 P.2d at 826, alteration in original). We then took pains to clarify our *Lickey* statement as noted:

> In so concluding, we were convinced that Lickey had satisfied the mandates of *Washington,* and presented a compelling reason why a psychological examination of the victim should be permitted. Therefore, we held that the district court should have afforded Lickey an opportunity to have the child examined, absent a showing by the State that a compelling reason existed to protect the child-victim.

*Keeney,* 109 Nev. at 225-26, 850 P.2d at 315. The "mandates of *Washington,*" which we reaffirmed in *Keeney,* were discussed and identified as follows:

> Whether a psychiatric examination of a victim of a sexual assault is appropriate is a matter left to the sound discretion of the trial court. [Citations omitted.] The trial judge should order an examination if the defendant presents a compelling reason for such an examination. Generally, there is no compelling reason for a psychiatric examination unless there is little or no corroboration of the victim's allegations and the defense has questioned the effect of the victim's emotional or mental condition upon her veracity.

*Washington,* 96 Nev. at 307, 608 P.2d at 1102-03 (citations omitted).

(2) The majority declares, with respect to Griego's motion for a mistrial, that "the oral reference by the prosecutor (that Griego was in jail) simply was additional proof of what the jury already knew. Prejudice does not result from the jury hearing proof of what it has already seen." It is elementary that statements of trial counsel are not proof or evidence of anything.

(3) The majority observes that Griego sought to bolster his claim of insufficiency of the evidence with respect to the conviction relating to Robert C. by directing our attention to the young people in the neighborhood who testified that Griego never exhibited any sexual deviancy toward them. The majority opinion then concludes that it is the province of the jury to determine the credibility and weight of conflicting testimony. I merely note that the testimony alluded to was not of a conflicting nature. The fact that Griego sexually molested three victims in his neighborhood is not in conflict with the proposition that he molested none of the other neighborhood children. The evidence alluded to by the majority was simply character evidence.

I realize that the last two points are of minor substantive importance and should ordinarily be corrected by the editing processes of a collegial body. I raise them only for purposes of highlighting what I respectfully view as an essentially deficient opinion in almost all of its aspects. I fear the loss of respect for a court that engages in the form of undulating jurisprudence evinced by today's opinion. I am also disappointed that the majority so easily disregards the burden of proof and standard of review that should have been dispositive of this appeal. In the aftermath of today's opinion, surely confusion will reign in the minds of both prosecutors and defense counsel on the points of law announced by the court in support of its decision to reverse all but one of Griego's convictions.

Respectfully, I dissent from all aspects of the majority opinion with the exception of the affirmance of Griego's conviction on count XXI, lewdness with a minor.