CLIFF THELBERT LINCOLN, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 30422

November 29, 1999 988 P.2d 305

*Michael R. Specchio,* Public Defender, and *Jennifer Lunt, Cheryl Bond,* and *John Reese Petty,* Deputy Public Defenders, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Gary Hatlestad,* Chief Deputy District Attorney, Washoe County, for Respondent.

Before YOUNG, AGOSTI and LEAVITT, JJ.

## OPINION

*Per Curiam:*

Appellant Cliff Thelbert Lincoln ("Lincoln") and Trilby Lyn Richardson ("Richardson") were married in June 1988. The couple had three daughters together, one of whom was the three-year-old victim in this case. Lincoln and Richardson divorced in October 1992. At the time of the divorce, Richardson resided in New Mexico. Lincoln was in the Navy and stationed in Virginia. The divorce agreement prohibited either parent from taking the children out of their state of residence without permission from the other parent.

In the first half of 1993, Lincoln gave Richardson a Ford Bronco that the couple had owned during their marriage. In June

1993, Richardson was cleaning the Bronco when she discovered a motel and credit card receipt from Reno, Nevada. The dates on the receipts were from a period in December 1992, when Lincoln had the three daughters for visitation. Richardson became angry because the receipts revealed that Lincoln had been out of state with the girls, against her specific instructions. Lincoln lived in Sacramento, California, during this period. Richardson had planned to visit relatives in the Sacramento area for Christmas in 1992. When Lincoln had the girls during the Christmas vacation, he took them to Reno, Nevada, without Richardson's knowledge or permission.

Richardson then spoke with her mother and her attorney about her discovery that Lincoln had taken the children out of state without her permission or knowledge. Richardson also spoke with her oldest daughter, the victim, to see if she remembered bright lights or anything that might resemble Reno, Nevada. Richardson tape-recorded this conversation so her attorney could hear what the victim said.

Richardson later testified at trial that she was surprised by the victim's responses. Richardson testified that when she started questioning the victim, the victim would curl up in a ball, stick her finger in her mouth, and talk like a baby, which was uncharacteristic for the victim. Instead of describing bright lights, as Richardson expected, the victim said that Lincoln's "pee-pee had come to get her" and the victim then rolled over and pointed to her bottom.

Several times during this conversation, the victim denied that Lincoln had touched her. Richardson continued to question the victim about whether Lincoln had touched her. Richardson believed that the victim's body language and tone of voice indicated that the victim was revealing that she merely did not want to talk about it, not that the incident did not happen.

Richardson then contacted authorities within the military. During an interview with military authorities, the victim's story remained consistent. The victim was then taken for a vaginal and rectal exam.

Subsequently, Richardson had a telephone conversation with Lincoln, who was stationed in Virginia. Military authorities had spoken to Lincoln about the alleged incident. Richardson asked Lincoln if he "did it." Lincoln said he did not do it. About one week later, Richardson and Lincoln spoke on the telephone again. According to Richardson's testimony, she again asked Lincoln, "Did you do it?" This time Lincoln said, "Yes."

On September 17, 1993, Naval Military Police Officer Robert Dortch ("Dortch") interrogated Lincoln. Lincoln then signed a confession, prepared by Dortch, detailing the molestation of the

victim. Lincoln testified at trial that he signed the confession because he believed it was the only way he would be permitted to leave. However, Lincoln initialed six separate lines on the confession, indicating that he understood his rights. One of these lines specifically acknowledged that Lincoln could terminate the interview at any time, for any reason.

Lincoln also spoke with counselors after the confession. Notes from one counselor reveal that Lincoln told the counselor that "the event was a blur." Lincoln claimed that he had not had anything to drink and that he blacked out. Lincoln's statements to several other health professionals indicated a similar lack of clarity or haziness of memory over the alleged molestation.

However, shortly after signing the confession, Lincoln was tearful and distraught when he went to speak with naval social worker Amy Barron ("Barron"). Prior to their conversation, Barron informed Lincoln that while their conversation would be private, she was required by law to report any incidence of child abuse, among other things. Lincoln stated to Barron that "he wished it never happened, that he was sorry for it, [and] that he was going to have to face it." Lincoln never specifically told Barron what he meant by "it."

Lincoln was tried and convicted of lewdness with a minor. He was sentenced to four years in prison, suspended, and placed on probation for an indeterminate period of time, not to exceed sixty months.

Lincoln first contends that the district court committed reversible error by not holding the requisite hearing outside the presence of the jury to determine the trustworthiness of the child-victim's hearsay statements. While we agree that the district court erred, we conclude that the error was harmless.

The hearing requirement is found in NRS 51.385 and provides in relevant part:

> 1. In addition to any other provision for admissibility made by statute or rule of court, a statement made by a child under the age of 10 years describing any act of sexual conduct performed with or on the child is admissible in a criminal proceeding regarding that sexual conduct if the:
> (a) Court finds, in a hearing out of the presence of the jury, that the time, content and circumstances of the statement provide sufficient circumstantial guarantees of trustworthiness; and
> (b) Child either testifies at the proceeding or is unavailable or unable to testify.

We have previously concluded that irrespective of objection by opposing counsel or confrontation of the victim, failure to hold a "trustworthiness" hearing pursuant to NRS 51.385 warrants reversal and requires a new trial. *See* Quevedo v. State, 113 Nev. 35, 38, 930 P.2d 750, 751 (1997); Lytle v. State, 107 Nev. 589, 591, 816 P.2d 1082, 1083 (1991). Both *Quevedo* and *Lytle* involved testimony from adults as to statements made to them by the victims. The child-victim testified in both cases. Neither *Quevedo* nor *Lytle* involved a confession by the defendant.

While *Quevedo* and *Lytle* applied a strict rule of automatic reversal for the violation of NRS 51.385, we have nevertheless applied a harmless error analysis in this situation. In Brust v. State, 108 Nev. 872, 877, 839 P.2d 1300, 1302 (1992), the hearsay statements consisted of the victim's own videotaped statements to a psychologist. The child-victim had already testified and been cross-examined when the tape was introduced. *See id.* at 877, 839 P.2d at 1303. Furthermore, the defendant had confessed to molesting the victim. *See id.* at 874, 839 P.2d at 1301.

In considering the defendant's confession and the fact that the district court had heard the victim's testimony before the hearsay statements were introduced, we reasoned that while the district court erred in not holding a "trustworthiness" hearing, it was harmless error under those particular circumstances. *See id.* at 877, 839 P.2d at 1303. We distinguished that case from *Lytle,* noting that the district court in *Brust* knew what to expect from the videotaped interview; hence, the statements were merely repetitive. *See id.* at 876-77, 839 P.2d at 1303. In *Lytle,* the district court admitted hearsay statements from five separate witnesses without prior knowledge of the content of the testimony. *See Lytle,* 107 Nev. at 590, 816 P.2d at 1083.

In the present case, the hearsay statements included the tape-recording of the victim's responses to Richardson's questions. The State also elicited testimony from Richardson as to how the victim had responded to her questioning and what the victim's body language was during the questioning. The victim was the State's first witness and was fully cross-examined by the defense. Finally, Lincoln signed a confession. Accordingly, we conclude that any error was harmless and, therefore, affirm Lincoln's conviction.

 ██

Lincoln next asserts that the district court erred by admitting the testimony of naval social worker Barron. Lincoln argues that the conversation between himself and Barron was privileged under NRS 49.252.

NRS 49.252 provides that confidential communications between a client and his social worker are privileged. Lincoln

relies on our holding in *Alward v. State*, 112 Nev. 141, 912 P.2d 243 (1996), in support of his contention. In *Alward,* although the counselor did not meet the definition of a "social worker," we concluded that the communications were inadmissible because the situation created the appearance of confidentiality. *Id.* at 157, 912 P.2d at 253-54.

In the present case, Lincoln argues that Barron informed him that their conversation was private. Thus, the communications were privileged. We disagree.

We conclude that the present case is distinguishable from *Alward.* While *Alward* involved a situation where the client had no reason to believe that his communications would not be confidential, Barron specifically told Lincoln that she would have to disclose any intimation of child abuse. Hence, any subsequent communication cannot have carried with it an expectation of confidentiality. Therefore, we conclude that the district court did not err in admitting Barron's testimony.

■■■

Lincoln also argues that the district court erred by not making a determination as to the victim's competency to testify. At trial, Lincoln did not request a voir dire examination of the victim, nor did Lincoln raise an objection with the district court as to the victim's competency. We have held that the issue of a juvenile witness's competency was barred from review by the failure to request a voir dire examination and the failure to object at trial to the witness's competency. *See* Griego v. State, 111 Nev. 444, 448, 893 P.2d 995, 998 (1995) (citing Emmons v. State, 107 Nev. 53, 61, 807 P.2d 718, 723 (1991)). Accordingly, we decline to review this issue.

For these reasons, we affirm Lincoln's conviction in all respects.